## DÍAZ, DEMANDANTE Y APELADO, *v.* ARKADIA SUGAR COMPANY, DEMANDADA Y APELANTE.

### APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre daños y perjuicios.

#### No. 1863.—Resuelto en junio 28, 1919.

DAÑOS Y PERJUICIOS — NEGLIGENCIA — EMPLEADO — PATRONO — DEBER DEL EMPLEADO DE NOTIFICAR AL PATRONO—LEY SOBRE RESPONSABILIDAD DE PATRONOS, DE 1901.—Cuando, como en el presente caso, la acción se funda, no en la ley relativa a la responsabilidad de los patronos, de 1901, sino en el artículo 1803 del Código Civil, el empleado que demanda a su patrono pidiendo indemnización de daños y perjuicios no tiene el deber de notificar al patrono del hecho del accidente dentro de los treinta días señalados por dicha ley, ni podrá estimarse prescrita su acción por haberse interpuesto la demanda después del plazo de seis meses de ocurrido el accidente fijado por la misma.

ID.—ID.—ANDAMIOS Y BARANDILLAS.—La Ley No. 30, de 1913, impone al patrono que intenta construir o reparar algún edificio, la obligación ineludible de construir, en beneficio y para la seguridad de sus carpinteros, albañiles u otros empleados, un "andamio, plataforma u otro aparato similar, que tendrá, siendo posible, dos pies de ancho por lo menos, e irá cercado de una barandilla de seguridad." Las palabras "siendo posible" se refieren al ancho del andamio. Con respecto a las barandillas, el estatuto claramente prescribe que el andamio debe ir cercado por ellas.

ID.—ID.—CONOCIMIENTO DE LOS DEFECTOS POR EL PATRONO—NOTIFICACIÓN POR PARTE DEL EMPLEADO.—Cuando el defecto consiste en haber dejado el patrono de cumplir con alguna de las obligaciones que le impone la ley, no es necesario alegar ni probar que el empleado le notificó la existencia del defecto, para concluir que el patrono estaba enterado, ya que debe presumirse que el patrono conocía necesariamente sus propias actuaciones.

ID.—ID.—ASUNCIÓN DEL RIESGO—LIMITACIÓN DE LA TEORÍA DE LA ASUNCIÓN DEL RIESGO.—Según el peso de las autoridades, la teoría de la asunción del riesgo (*asumption of risk*), no es aplicable al caso en que el patrono deja de cumplir con un deber impuéstole por la ley.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. Luis Llorens Torres.*

Abogado del apelado: *Sr. Francisco González.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

Inocencio Díaz entabló demanda en la Corte de Distrito de Humacao contra la "Arkadia Sugar Company", una corporación organizada de acuerdo con las leyes de la isla, en

reclamación de dos mil pesos por daños y perjuicios. Se alega en la demanda, en resumen, que el 8 de diciembre de 1915, el demandante estaba empleado por la corporación demandada, trabajando como ayudante de carpinteros, en la construcción de una casa de la factoría de la demandada, bajo las órdenes de sus capataces, sobre un andamio que se utilizaba para realizar el trabajo, y que al ir a colocar una viga sobre el andamio, perdio el equilibrio y a causa de no tener la demandada un andamio apropiado, rodó al suelo desde una altura bastante elevada, fracturándose un brazo y recibiendo otras contusiones de carácter grave, necesitando asistencia médica por espacio de cinco meses y quedando imposibilitado de trabajar en el futuro en su oficio. Que el accidente se debió a la negligencia de la demandada que no facilitó a sus operarios un andamio en las condiciones exigidas por la ley, con baranda y pisos sólidos. Que la demandada tenía conocimiento del estado peligroso del andamio. Que el demandante se lo hizo saber repetidas veces.

La demandada alegó que la demanda no aducía hechos suficientes para determinar una causa de acción. Señalado día para la vista de la excepción, sólo compareció el demandante y la corte entendiendo que la demanda era suficiente, desestimó la alegación de la demandada. Esta entonces contestó la demanda negando todos y cada uno de los hechos de la misma, y luego enmendó su contestación alegando como materia nueva que el demandante nunca trabajó con la demandada, ni con ninguno de sus empleados, por orden de la demandada; que el andamio en que trabajaban los empleados de la demandada estaba en perfecto estado, provisto de barandas, pisos y todo lo necesario para la seguridad de los empleados, y que el accidente ocurrídole al demandante se debió a su propia negligencia y no a la de la demandada que nada tenía que ver con el trabajo que realizaba el demandante en el edificio de la factoría de la demandada.

Trabada así la contienda, se celebró la vista en la que

ambas partes practicaron pruebas, decidiendo la corte de distrito finalmente el caso en favor del demandante. Dicha corte, en su decisión, se expresó como sigue:

"De un detenido estudio de la prueba practicada, esta corte llega a la conclusión de que se han probado todas las alegaciones de la demanda; que las lesiones sufridas por el demandante revisten un carácter de gravedad tal que dicho individuo, joven vigoroso con anterioridad al accidente, que podía realizar cualquier clase de trabajo fuerte, ha quedado de tal manera y tan gravemente lesionado, que no podrá jamás realizar trabajo alguno, toda vez que ha perdido por completo el uso y movimiento del brazo derecho y en gran parte del brazo izquierdo, y sus extremidades inferiores están también seriamente afectadas. En realidad de verdad, el demandante tendrá que vivir la vida de un menesteroso o de un indigente, puesto que careciendo de bienes de fortuna y no pudiendo trabajar, tendría que implorar para su subsistencia la caridad ajena, si la corte no le acordara el derecho que él reclama de la corporación demandada. La negligencia de ésta es negligencia *per se,* en atención a no haberse dado cumplimiento a las disposiciones de la ley número 30 aprobada en 13 de marzo de 1913, proveyendo para la construcción de andamios."

No conforme la corporación demandada, apeló para ante esta Corte Suprema. El demandante apelado compareció al acto de la vista del recurso, pero no presentó alegato escrito.

Sostiene la parte apelante que la demanda no aduce hechos suficientes para determinar una causa de acción, porque en ella no se alega que el demandante diera aviso, dentro del término de treinta días fijado por la "Ley relativa a la responsabilidad de los patronos, por accidentes que, en su servicio, sufran sus empleados," aprobada en 1 de marzo de 1902, del momento, lugar y causa de la lesión; y sostiene además que habiéndose interpuesto la demanda después de seis meses de ocurrido el accidente, por mandato de la ley citada carecía ya de acción el demandante.

Las anteriores contenciones, parten de la base de que este pleito está regulado por la ley invocada. Dicha ley es-

taba en efecto en todo su vigor cuando ocurrió el accidente y cuando la demanda se interpuso, pero ¿era la única en que podía basar su acción el demandante?

A nuestro juicio no era la única, existiendo como existía también en vigor el precepto general contenido en el artículo 1803 del Código Civil Revisado, precepto que ha regido en Puerto Rico desde 1889, ya que el artículo 1803 del Código Civil Revisado es igual al artículo 1902 del Código Civil antiguo.

Desde 1908 esta Corte Suprema, por medio de su juez, Sr. Figueras, dijo:

"Por la demanda parece que se ha tenido el propósito de fundar la acción de daños y perjuicios que se ejercía en la ley relativa a la responsabilidad de los patronos por accidentes que, en su servicio, sufran sus empleados. (Ley aprobada en primero de marzo de 1902.) Pero esta inteligencia desaparece luego al leer la súplica de la misma, toda vez que la reclamación se hace ascender a 10,000 pesos cuando la ley anteriormente citada sólo autoriza al demandante en este caso a reclamar como máximum la cantidad de dos mil dollars. (Véase la sección 2ª. de la ley, 323 de los Estatutos Revisados.)

"Y tan natural resulta esta inteligencia de la demanda que el juez sentenciador presume que sólo por equivocación han podido pedirse 10,000 pesos como indemnización, y considera y analiza la reclamación como si estuviese comprendida en la ley ya citada y como si sólo se reclamasen $2,000.

"El apelante en su alegato escrito presentado ante esta Corte Suprema claramente dice que su demanda se funda en los artículos 1803 y siguientes del vigente Código Civil y puesto que no hay incompatibilidad entre ambas leyes y que el Código Civil Revisado es posterior a la ley de patronos, consideremos y resolvamos este caso conforme al código dentro del que plantea ahora la cuestión el apelante y demandante Román Natal." *Natal* v. *Bartolomey et at.,* 14 D. P. R. 486, 488.

La opinión de esta corte está sostenida por los precedentes y por la jurisprudencia americanos. Bajo el epígrafe "Derechos de acción concurrentes bajo los estatutos y bajo la ley común," dice C. B. Labatt, en sus "Comentaries of the Law of Master and Servant," segunda edición, tomo 5,

pág. 5144, párrafo 1667, resumiendo la jurisprudencia, "un empleado no está impedido por las prescripciones de cualquiera de estos estatutos" (se refiere a las leyes sobre responsabilidad de patronos), "de recobrar daños en una acción basada en la ley común, si las circunstancias fueren tales que lo hubieran autorizado para sostener tal acción antes de ser aprobados dichos estatutos. Y el hecho de que el demandante pueda haber sostenido una acción de acuerdo con la ley común, no le priva de los beneficios del estatuto. Pero si la acción se establece basada en que existió negligencia tal como ésta era entendida por la ley común, el demandante no puede disfrutar de los beneficios del estatuto."

Siendo esto así, no apareciendo que el demandante fundara su acción en la ley relativa a la responsabilidad de los patronos de 1902, cae por su base la contención del apelante, presentada, además, al parecer, por vez primera en este Tribunal Supremo. Y habiendo llegado a la anterior conclusión, procederemos al estudio del caso a la luz de lo preceptuado en el artículo 1803 del Código Civil que dispone que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.

¿A qué se debió el accidente? Alegó el apelado que al hecho de no tener baranda el andamio y así lo estimó probado la corte de distrito. Declarando bajo juramento el demandante en el acto de la vista, entre otras cosas, dijo:

"Que el día ocho de diciembre de mil novecientos quince, se hallaba trabajando en la Central Arkadia Sugar de ayudante de carpintero, y se cayó de un andamio mal construído. Que esos andamios estaban mal construídos porque el andamio tenía un tablón sin más baranda ni más nada, cuyo tablón no era nada más que de ocho pulgadas.—Ese andamio estaba afirmado a un lado y afirmado o otro, pero no había en ese andamio ninguna baranda, nada absolutamente, no había baranda, ni pasa-manos, ni sogas a los lados, no había nada.—Que le ocurrió que estando trabajando en ese andamio, en momentos en que estaba maniobrando con una pieza, se resbaló de la parte contraria mía, y como me quedaba en los pies, me sacó de

pies, y yo no encontrándome con otra escapatoria, tuvo que volcar con ella hacia abajo de una altura de treinta a treinta y cinco pies.''

¿Tenía o no baranda el andamio? La prueba fué contradictoria. Los testigos del demandante sostuvieron que no tenía; los del demandado que tenía. La corte resolvió el conflicto en favor del demandante y no habiéndose demostrado que actuara movido por pasión, prejuicio o parcialidad, o que cometiera algún error manifiesto, debe prevalecer su decisión.

¿Estaba obligada la demandada a construir la baranda? Lo estaba. Era un deber impuéstole por la Ley No. 30, de 1913. Sostiene la demandada que de acuerdo con los términos de esa ley debió haberse demostrado que ''era posible'' la construcción de la baranda. No estamos conformes. La ley dice, en lo pertinente: ''Todo andamio, plataforma u otro aparato similar, tendrá, siendo posible, dos pies de ancho por lo menos e irá cercado de una barandilla de seguridad.'' Las palabras ''siendo posible'' se refieren al ancho. Con respecto a la barandilla, todo andamio debe ir cercado por ella.

Sostiene además el apelante que en la demanda existen alegaciones que no fueron confirmadas por la prueba y señala la 7ª., que dice: ''que el demandante había hecho saber a la demandada, repetidas veces, el estado inservible del antes citado andamio.''

En efecto la prueba es deficiente con respecto a este extremo, pero a nuestro juicio para concluir que la demandada conocía la existencia del defecto, no es necesario alegar ni probar que el demandante se lo había notificado. Por ministerio de la ley, como hemos visto, la demandada estaba obligada a construir el andamio. No lo hizo. ¿Qué más hay que probar? La demandada necesariamente conocía sus propias actuaciones.

Y sostiene, por último, la apelante que de la misma demanda y de la propia prueba del demandante se infiere que

en todo caso dicho demandante conocía el defecto y cono-
ciéndolo asumió el riesgo que pudiera sobrevenir a conse-
cuencia del mismo, no teniendo, por tanto, ningún derecho a
reclamar contra el patrono de acuerdo con la jurisprudencia.

Estamos conformes en que la demanda y la prueba de-
muestran que el demandante tenía conocimiento del defecto
y se daba cuenta del riesgo, y también lo estamos en que la
doctrina relativa a la asunción del riesgo ha sido reconocida
y aplicada por este tribunal.    Véase el caso de *Cartagena*
v. *Mayagüez Light and Ice Co.* 21 D. P. R. 178, 183, y los
en él citados.

Pero ocurre aquí una circunstancia que impide la aplica-
ción de tal doctrina, a saber: que la negligencia del patrono
se debió al hecho de haber dejado de cumplir un deber im-
puéstole expresamente por la ley y en tal caso no puede in-
vocar en su favor la defensa de la asunción del riesgo por
parte de su empleado.

Labatt, en sus citados "Commentaries", tomo 5, pág. 5059
y siguientes, párrafo 1647 *a,* trata de esta cuestión así:

"Aun cuando las defensas basadas en la doctrina de que por el
contrato se asume el riesgo y en la máxima *Volenti non fit injuria*
teóricamente son distintas, es imposible mantener esa distinción al
discutir los casos americanos en los cuales la causa de acción descansa
en el incumplimiento del patrono con un deber específico impuéstole
por el estatuto.    En muchos casos la corte dice de modo expreso que
la asunción del riesgo se basa en un contrato tácito; y en otros, se
refiere específicamente a la defensa fundada en la máxima; pero
muy a menudo se dice que la defensa de que se asume el riesgo se
funda en la máxima, o como se ha llegado a decir en algunos casos,
que se basa en el contrato y también en la máxima; y del examen
de un gran número de casos que envuelven el incumplimiento del
patrono con un deber específico del estatuto, parece deducirse que
las cortes, ya hagan referencia a la defensa por virtud del contrato
o de la máxima, sólo tienen presente una sóla defensa, no habiéndose
encontrado ningún caso que sugiera que existan dos distintas de-
fensas, una de las cuales podría hacerla el patrono, mientras que no
la otra.    *    *    *''

"Existe gran diversidad de criterio en las decisiones americanas respecto al punto de si la continuación del empleado en el servicio con conocimiento del hecho de haber el patrono dejado de cumplir con los requerimientos del estatuto, constituye o no defensa en una acción basada en tal incumplimiento por parte del patrono. La mayoría de las autoridades sostienen (y esta doctrina al parecer va tomando incremento), que un empleado no asume el riesgo que pueda derivarse del incumplimiento del patrono con un deber estatutorio.

"Generalmente se sostiene en casos de esta naturaleza que la doctrina de que se 'asume el riesgo' está basada en un contrato tácito; y, por consiguiente, estaría en contra de la política pública permitir que contrate el patrono en contra de los efectos de una infracción del estatuto. Se infiere necesariamente de esta teoría que un precepto del estatuto impone al patrono obligaciones superiores a las impuestas por la ley común; este criterio se adopta de modo expreso, por lo menos en un caso, pero no faltan casos que sostienen lo contrario. El criterio más racional parece ser que el permitir a un empleado asumir tal riesgo prácticamente sería anular el efecto beneficioso del estatuto, pues sería posible para el patrono que con simplemente hacer saber al empleado que no puede cumplir con el mandato de la ley, eludiera cualquier responsabilidad que tuviera para con dicho empleado por tal incumplimiento."

Son muy interesantes y numerosas las decisiones citadas por el autor para sostener la doctrina enunciada, que es a nuestro juicio la correcta.

"El otro aspecto de la cuestión es," continúa diciendo el Sr. Labatt, "que si el empleado tiene conocimiento de que el patrono ha dejado de cumplir con un deber estatutorio, dicho empleado puede asumir los riesgos de tal incumplimiento como lo asumiría por dejar el patrono de cumplir con cualquier otro deber.

"Los casos en que se considera la cuestión desde este punto de vista, sostienen en su mayor parte, que la doctrina de la asunción del riesgo no está basada en un contrato, sino en la máxima *Volenti non fit injuria,* y que, por tanto, no está envuelta la cuestión del interés público a que se ha hecho referencia. El principio fundamental en que descansan los casos de esta naturaleza es el de que cuando no existe un precepto terminante que elimine tal defensa, las cortes no pueden interpretar el estatuto en el sentido de que contiene tal precepto, puesto que los estatutos en derogación de la ley común deben ser interpretados restrictivamente."

Por virtud de todo lo expuesto opinamos que debe confirmarse la sentencia recurrida.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y Hutchison.

El Juez Asociado Sr. Aldrey disintió.