Tomasa Carrión Viuda de Gago, por sí y como madre con patria potestad sobre su hija legítima menor de edad Norma Esther Gago Carrión, demandantes y apelantes, v. Tomás Díaz, demandado y apelado.

Núm. 8696.—*Sometido:* Abril 15, 1943. *Resuelto:* Junio 23, 1943.

*Harry B. Llenza,* abogado de las apelantes; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados del apelado.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

Tomás Díaz, el demandado apelado, contrató con un pintor llamado Gaspar Díaz, la pintura de una casa de su propiedad situada en la Urbanización Hipódromo de Santurce. El contrato se celebró por una cantidad global e incluía la mano de obra, debiendo además dicho pintor suplir las escaleras, brochas y demás utensilios de trabajo, mientras que el propietario de la casa suministraba la pintura y demás materiales. Cuando ya dicho pintor había pintado parte de la casa, fué retirado por el propietario, Tomás Díaz, por haber notado éste que dicho pintor estaba tomando licor.

Entonces Tomás Díaz contrató la terminación del trabajo con Sebastián Gago Mercado, por la cantidad de $25 y bajo las mismas condiciones que Gaspar Díaz, el anterior pintor.

El día 4 de diciembre de 1941, entre diez y once de la mañana, y mientras estaba subido en una escalerilla de cinco

pies de altura, propiedad del dueño de la casa, pintando exteriormente una de las ventanas de la planta baja, Sebastián Gago se cayó de dicha escalera, recibiendo varios golpes. Fué conducido al Hospital de Distrito de Bayamón, y allí falleció en la madrugada del 6 de diciembre de 1941 a consecuencia de una peritonitis aguda causada por laceración traumática del intestino delgado.

Su viuda, por sí y como madre con patria potestad sobre su hija legítima menor de edad, entabló acción contra Tomás Díaz en reclamación de daños y perjuicios sufridos por la muerte de su causante, Sebastián Gago Mercado.

Alegaron las demandantes que la muerte de Sebastián Gago se debió a la negligencia y descuido de su patrono, Tomás Díaz, al no proveer a dicho pintor de un andamio o plataforma que le ofreciera propia y adecuada protección a su vida mientras realizaba sus labores de pintor, y al facilitarle solamente una escalera de tijeras. Contestó el demandado negando específicamente los hechos esenciales de la demanda y alegando como defensas especiales la insuficiencia de los hechos alegados y la negligencia del causante de las demandantes como causa próxima y única del accidente.

Declarada sin lugar la demanda y condenadas las demandantes al pago de costas, radicaron el presente recurso de apelación. Para sostenerlo alegan que la corte inferior erró:

1. Al permitir al testigo Luis Maisonet declarar sobre si era o no necesaria la construcción de andamios en el trabajo que realizaba el causante de las demandantes-apelantes, Sebastián Gago, y al negarse a eliminar su interrogatorio, por cuanto la determinación de la aplicabilidad de la Ley de Andamios era una función de la Honorable corte inferior, y no para ser resuelta por conclusiones de dicho testigo.

2. Al permitir declarar al testigo Tomás Díaz, a pesar de la objeción de las demandantes-apelantes, sobre el convenio que celebrara con Gaspar Díaz, para la pintura de las casas de su propiedad, por no ser dicho Gaspar Díaz parte

en este pleito, ni obligar a Sebastián Gago Mercado, cualquier convenio que hubiera celebrado con el demandado-apelado.

3. Al resolver que de acuerdo con la Ley núm. 30 de 1913 (pág. 73), según fuera enmendada por la Ley núm. 61, aprobada en mayo 6, 1936 ((1) pág. 315), el demandado-apelado, Tomás Díaz, no tenía la obligación de construir en beneficio y para la seguridad del pintor Sebastián Gago Mercado, un andamio o plataforma, de acuerdo con la determinación de la referida ley.

4. Al resolver que no se había probado negligencia alguna legal del demandado-apelado, por no estar obligado por precepto legal alguno a construir un andamio para proteger la vida y seguridad del pintor Sebastián Gago.

5. Al resolver que Sebastián Gago Mercado era un contratista independiente, sin que se hubiera levantado tal defensa, por el demandado-apelado en sus alegaciones y sin que la prueba presentada sostuviera en forma alguna dicha conclusión, y que como tal asumiera los riesgos que pudieran sobrevenir en la ejecución de su trabajo.

6. Al declarar sin lugar la demanda de este pleito.

La primera cuestión a tratar es una de jurisdicción levantada por el apelado. Sostiene el mismo en su alegato que toda vez que la sentencia en el caso de autos fué dictada por la corte inferior en octubre 20 de 1942, mientras que la apelación no fué interpuesta y notificada hasta el día 1º de diciembre de 1942, este tribunal carece de jurisdicción apelativa sobre el caso, por haber transcurrido el término estatutario para apelar.

No tiene razón el apelado. En innumerables ocasiones ha sostenido este tribunal que el término para apelar no comienza a correr sino desde la fecha en que el secretario de la corte de distrito archiva copia de la notificación de sentencia con los autos del caso. (Véanse: *Arzuaga* v. *Roe et al.*, 20 D.P.R. 307; *Martorell* v. *"Andino & Febres"*, 38

D.P.R. 166; *Sánchez* v. *De Jesús*, 39 D.P.R. 844; *Buxó, Jr.* v. *Sellés*, 47 D.P.R. 313; *Rodríguez* v. *Torres*, 48 D.P.R. 917; *Ríos* v. *Díaz*, 54 D.P.R. 697; *Vázquez* v. *González*, 60 D.P.R. 718, y *Ramírez Santibáñez* v. *Banco Comercial de P. R.*, (*Per Curiam*), Sentencia de 15 enero de 1943, 61 D.P.R. 971.) En el presente caso el archivo de la copia de la notificación de sentencia con los autos no se llevó a cabo sino hasta el 2 de noviembre de 1942, según consta del certificado librado por el Secretario de la Corte de Distrito de San Juan (que se une al final del expediente). Por tanto, no habiendo transcurrido sino 29 días desde tal fecha hasta la radicación por las apelantes del escrito de apelación, el mismo fué radicado dentro del término estatutario y por consiguiente esta Corte tiene jurisdicción para conocer del recurso.

Las cuestiones principales a resolver en este caso son dos:

(*a*) ¿Estaba el demandado obligado por la ley a construir un andamio o plataforma en beneficio y para la protección y seguridad del pintor Sebastián Gago Mercado?

(*b*) ¿Era el pintor Sebastián Gago un contratista independiente, o por el contrario existía entre él y Tomás Díaz la relación de patrono y empleado?

Consideremos la primera cuestión. La ley que regula la materia es la núm. 61 de 6 de mayo de 1936, que derogó la anterior Ley núm. 30 de 1913. Alega la parte apelante que según dicha ley el demandado estaba obligado a construir un andamio o plataforma para la seguridad y protección del pintor.

Un análisis de dicha ley nos lleva a la conclusión de que no existe tal obligación. En ninguna de sus disposiciones se impone a todo el que vaya a realizar un trabajo de los enumerados en la ley la obligación de construir andamios o plataformas. La ley lo único que hace es establecer la forma en que han de construirse dichos andamios y los requisitos que se deberán cumplir, pero en ninguna parte dice que será

obligación de todo el que va a reparar o pintar su casa el construir andamios o plataformas para protección de sus obreros. La mencionada ley (Leyes de 1936, pág. 315) en su sección 2 dice, al establecer los requisitos que se deberán cumplir, que "toda persona natural o jurídica que intente llevar a cabo en Puerto Rico alguna obra para la cual *se haga necesaria* la construcción de andamios . . . ." (subrayado nuestro), de lo cual deducimos que solamente se deberán construir andamios cuando sea necesario, es decir, que no siempre está obligado el dueño a construir andamios. Por consiguiente, Tomás Díaz estaba obligado a construir un andamio, si la construcción del mismo era necesaria para la protección y seguridad de su empleado. Pero, ¿era dicha construcción necesaria? Creemos que no.

El pintor, Sebastián Gago, al tiempo de ocurrir el accidente que le causó la muerte estaba subido a una escalerilla de mano de cinco pies de altura, pintando una ventana de la planta baja. Suponiendo que Gago hubiese estado subido en el último escalón, o sea a una altura de cinco pies del suelo, la superficie que estaba pintando hubiese entonces estado a una altura de diez o doce pies y para pintar a tal altura nos parece que no es necesario construir andamios. Estando obligado el patrono a construir un andamio solamente cuando el mismo es necesario para la seguridad del obrero, no erró la corte inferior al admitir el testimonio del pintor Maisonet, quien declaró que no es necesario el andamio para pintar a una altura de diez pies o menos, pues eso se puede hacer con una escalera de cinco o seis pies.

El accidente que sufrió Gago fué, en nuestra opinión, uno desgraciado. De acuerdo con el testimonio pericial, en la gran mayoría de los casos una caída desde esa altura no es suficiente para causarle la muerte a una persona. Así asumiendo para los efectos de esta discusión, que entre Gago y Tomás Díaz existía la relación de patrono y empleado, no creemos que dicho patrono violase la ley o fuese negligente

al no suministrar a su empleado un andamio o plataforma con barandilla para realizar el trabajo.

La parte apelante cita el caso de *Díaz* v. *Arkadia Sugar Co.*, (1919) 27 D.P.R. 583, para demostrar que el demandado apelado estaba obligado a construir un andamio. En el sumario de dicho caso se dice que "La Ley núm. 30 de 1913, impone al patrono que intenta construir o reparar algún edificio, la obligación ineludible de construir, en beneficio y para la seguridad de sus carpinteros, albañiles u otros empleados, un 'andamio, plataforma, u otro aparato similar,...' ". Sin embargo, dicho sumario no se ajusta estrictamente a lo resuelto por dicho caso. Se trataba de un obrero que estaba trabajando sobre un andamio y al ir a colocar una viga perdió el equilibrio y cayó a causa de no tener el andamio en que trabajaba barandilla, es decir, a causa de no haber construído la demandada un andamio de acuerdo con los requisitos exigidos por la ley. La corte resolvió que, de acuerdo con lo prescrito por la Ley núm. 30 de 1913, "con respecto a la barandilla, todo andamio debe ir cercado por ella". Lo que en realidad se resuelve en dicho caso es que todo andamio que se construya deberá estar dotado de los medios de seguridad que requiere la ley para la protección de los obreros que en ellos trabajan, pero nada resuelve en cuanto a cuándo es que se deben construir andamios.

Es verdad que (a la página 588) la corte en su opinión dice:

"Sostiene además el apelante que en la demanda existen alegaciones que no fueron confirmadas por la prueba y señala la 7a., que dice: 'que el demandante había hecho saber a la demandada, repetidas veces, el estado inservible del antes citado andamio.'

"En efecto la prueba es deficiente con respecto a este extremo, pero a nuestro juicio para concluir que la demandada conocía la existencia del defecto, no es necesario alegar ni probar que el demandante se lo había notificado. Por ministerio de la ley, como hemos visto, la demandada estaba obligada a construir el andamio. No lo hizo. ¿Qué más hay que probar? La demandada necesariamente conocía sus propias actuaciones."

Aunque la corte dijo que la demandada, por ministerio de la ley estaba obligada a construir el andamio, no creemos que se quisiera decir el andamio, puesto que bien o mal construído, éste estaba hecho, y si no lo hubiese estado el obrero no se hubiese podido caer del mismo. En nuestra opinión, lo que en realidad se quiso decir fué que la corporación demandada estaba obligada a construir el andamio adecuadamente, pues para decir que la corporación estaba obligada a construir el andamio no había base ni en los hechos del caso ni en la ley.

Por estas razones no creemos que se cometiera el error señalado.

La otra cuestión envuelta trata del carácter de las relaciones existentes entre el demandado Díaz y el causante de las demandantes, Sebastián Gago.

Alega la parte apelante que el demandado apelado "no levantó en sus alegaciones la defensa de contratista independiente". En su demanda alegaron las demandantes que Sebastián Gago Mercado "en 4 de diciembre de 1941 y mientras trabajaba por una compensación de $4.50 diarios para su patrono no asegurado en el Fondo del Seguro del Estado, el demandado Tomás Díaz, . . .".

Esta alegación fué contestada por el demandado en la forma siguiente:

"3. Del párrafo tercero de la demanda, . . . niega que en 4 de diciembre de 1941 o en cualquier otra fecha trabajara por una compensación de $4.50 diario para el demandado."

Es decir, el demandado lo único que niega en su contestación es que el pintor Gago trabajase por una compensación de $4.50 diarios, admitiendo, por tanto, el resto de la alegación, o sea que dicho pintor trabajaba para su patrono no asegurado en el Fondo del Seguro del Estado, el demandado Tomás Díaz. La contestación del demandado envuelve un "negative pregnant", admite el hecho de la relación de

patrono y empleado, y solamente controvierte el de la compensación que percibía el obrero lesionado. Véase el caso de *Bahr* v. *American Railroad Co.*, resuelto en mayo 17 de 1943 (61 D.P.R. 917). Por la razón antes expuesta, quedó el demandado impedido (*estopped*) de presentar en el juicio prueba contraria al hecho admitido en la contestación, no pudiendo por tanto presentar la defensa de contratista independiente, como lo hizo.

En nuestra opinión, la corte inferior cometió error al admitir prueba tendiente a demostrar que las relaciones entre el demandado y el causante de las demandantes no eran las de patrono y empleado. Este error no produce la revocación de la sentencia recurrida toda vez que hemos resuelto que existía la relación de patrono y obrero, pero que el patrono dentro de las circunstancias del caso no estaba obligado a proveer al obrero de un andamio.

La única cuestión que queda por estudiar es si hubo o no negligencia por parte del demandado, Tomás Díaz.

La acción es una traída, no bajo la Ley de Compensaciones por Accidentes del Trabajo (Ley núm. 45 de 1935, (1) pág. 251) sino bajo los artículos 1802 y siguientes del Código Civil, Edición 1930, que son los que tratan de la responsabilidad por causa de culpa o negligencia. Siendo ello así, corresponde a la parte demandante demostrar que hubo negligencia de parte del demandado.

Ya hemos visto que el demandado no dejó de cumplir ninguna obligación impuéstale por ley al dejar de construir un andamio para la protección de su empleado mientras pintaba una ventana del piso bajo.

El accidente ocurrió al caerse el empleado de una escalera propiedad de su patrono, pero la prueba presentada nada indicó en cuanto a si la escalera estaba o no en mal estado; nadie presenció la caída del pintor, ni se demostró en ningún momento que el demandado hubiese sido negligente. Por

tanto, habiendo la parte demandante dejado de presentar prueba tendiente a demostrar que dicho demandado fuera negligente, la corte inferior actuó correctamente al declarar sin lugar la demanda.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Sr. Del Toro no intervino.