TEXTO COMPLETO DE LA SENTENCIA
Sonia Ivette Rodríguez Figueroa, en adelante “apelante”, nos solicita la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina. Mediante dicha Sentencia, el tribunal a quo desestimó una demanda presentada por la apelante, más se le ordenó el pago de costas, gastos y honorarios de abogado por temeridad.
Por los fundamentos que expondremos a continuación, confirmamos la sentencia apelada.
I
El 22 de abril de 1998, la apelante presentó una Demanda contra Sam's Club y Wal-Mart Puerto Rico, Inc., esta última como dueña del referido almacén de descuento. Como parte de las alegaciones de la demanda, la apelante alegó que debido a la negligencia del establecimiento comercial, ésta sufrió una caída en la tienda Sam's Club de Carolina, el 7 de noviembre de 1997. La apelante precisó que tropezó con un carro de compras, identificado como uno tipo plataforma o “u-cart”, en el área de membresía de la tienda. En la reclamación, la apelante reclamó daños en el área cervical; Síndrome de Distrofia Simpática; necesidad de terapias e incapacidad de funciones fisiológicas generales. Oportunamente, Sam's Club contestó la demanda y como defensa afirmativa negó la negligencia, los daños alegados y las cuantías reclamadas. Así mismo, Sam's Club señaló que el carro plataforma fue llevado al área de membresía por el codemandante Kenneth Torres Rodríguez, hijo de la aquí apelante.
*173 Presentada la totalidad de la prueba por ambas partes, el foro a quo desestimó la demandada incoada por la apelante. El Tribunal de Primera Instancia, luego de aquilatar la prueba presentada, estimó que las inconsistencias y contradicciones en la prueba presentada por la apelante, más la ocultación de datos importantes, no le permitió darle credibilidad alguna a dicha prueba. Como consecuencia, no se configuró la causa de acción bajo el Artículo 1802 del Código Civil. 
Inconforme, el 7 de marzo de 2005, la apelante presentó el recurso de epígrafe en el que nos solicitó la revocación de la sentencia emitida por el Tribunal de Primera Instancia. Alegó, en síntesis, que erró el tribunal de instancia al no aplicar debidamente las normas pertinentes de negligencia, previsibilidad y nexo causal, al no otorgarle credibilidad a la prueba presentada por la apelante y al imponerle honorarios de abogado por temeridad.
II
El Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. 5141, establece una de las fuentes de las obligaciones y deberes extracontractuales impuestos por la naturaleza y por la ley, necesarias para la armónica convivencia social. Ramos v. Orientalist Rattan Furn., Inc., 130 D.P.R. 712 (1992). El referido artículo establece:

“El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. ”

La responsabilidad extracontractual es producto de los actos u omisiones en que intervenga cualquier género de culpa o negligencia. Para poder lograr ser indemnizado del daño, el perjudicado debe demostrar la existencia del mismo, tomando en consideración la concurrencia de tres requisitos; (1) la presencia de un daño físico o emocional en el demandante; (2) que haya surgido a raíz de un acto u omisión culposa o negligente del demandado, y (3) que exista un nexo causal entre el daño sufrido y dicho acto u omisión. Cintrón Adorno v. Gómez, 147 D.P.R. 576 (1999).
Anteriormente, hemos definido la culpa o negligencia como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Montalvo v. Cruz, supra; Ramos v. Carlo, 85 D.P.R. 353 (1962). Este deber de anticipar y prever los daños no se extiende a todo peligro imaginable, sino a aquél que llevaría a una persona prudente a anticiparlo. Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Pacheco v. A.F.F., 112 D.P.R. 296 (1982); Hernández v. La Capital, 81 D.P.R. 1031 (1960). De igual forma, tampoco es necesario que se haya anticipado la ocurrencia del daño en la forma precisa en que ocurrió; basta con que el daño sea una consecuencia natural y probable del acto u omisión negligente. Específicamente, señalamos que:
“...el acto negligente puede definirse como 'el quebrantamiento del deber impuesto o reconocido por ley de ejercer, como lo haría un hombre prudente y razonable, aquel cuidado, cautela, circunspección, diligencia, vigilancia y precaución que las circunstancias del caso exijan, para no exponer a riesgos previsibles e irrazonables de daños como consecuencia de la conducta del actor, a aquellas personas que, por no estar ubicadas muy remotas de éste, un hombre prudente y razonable hubiese previsto, dentro de las circunstancias del caso, que quedaban expuestos al riesgo irrazonable creado por el actor.' Por tanto, para que ocurra un acto negligente tiene que existir un deber de cuidado impuesto o reconocido por ley, y el quebrantamiento de este deber. Esto significa que en cada situación de hechos, la ley impone al actor observar un 'estándar de cuidado' que será determinado por las circunstancias particulares del caso. ” Brau del Toro, Herminio M., Los Daños y Perjuicios Extracontractuales en Puerto Rico, 1986, pág. 183.
Para que exista una causa de acción bajo el Artículo 1802 de nuestro Código Civil, supra, es necesario que *174 exista un nexo o relación causal entre el daño sufrido y la conducta negligente. Es norma reiterada en nuestra jurisdicción que la doctrina que nos rige respecto al nexo o relación causal, es la doctrina de la causalidad adecuada, según la cual “no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general.” Soc. de Gananciales v. Jerónimo Corp., 103 D.P.R. 127, a la pág. 134 (1974). Véase, además, Toro Aponte v. E.L.A., supra. Al referirnos a la omisión, hemos señalado que ésta genera responsabilidad civil por negligencia si tal conducta constituye el quebrantamiento de un deber de cuidado impuesto o reconocido por ley y si de haberse realizado el acto omitido se hubiera evitado el daño. Arroyo López v. E.L.A., 126 D.P.R. 682, (1990); Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94 (1986). En materia de daños “ante una reclamación fundada en responsabilidad por omisión, la pregunta de umbral es si existía un deber jurídico de actuar de parte del alegado causante del daño.” Colón González v. K-Mart, 2001 J.T.S. 98, 154 D.P.R. _ (2001). En torno a este tema, el Tribunal Supremo ha expresado:

“En materia de responsabilidad civil extracontractual, el hecho productor del daño nunca se presume. Así, pues, la mera ocurrencia de un accidente, sin más, no puede constituir prueba concluyente demostrativa de conducta lesiva antijurídica de la parte demandada, elemento indispensable para engendrar responsabilidad. Por tanto, quien alegadamente sufre un daño por la negligencia de otro tiene ‘la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos, supra, pág. 1484.”

Sencillamente, la negligencia no se presume y quien la imputa debe probarla. Vaquería Garrochales, Inc. v. A.P.P.R., 106 D.P.R. 799 (1978); Morales Mejias v. M.Pack. & Ware. Co., 86 D.P.R. 3, 5 (1962); Carrión v. Díaz, 62 D.P.R. 289 (1943). La negligencia por omisión surge al no anticipar aquellos daños que una persona prudente y razonable podría racionalmente prever que resultarían de no cumplirse con el deber. Por tanto, “un daño no genera una causa de acción por negligencia si dicho daño no fue previsto, ni pudo haber sido razonablemente anticipado por un hombre prudente y razonable.” Herminio Brau del Toro, Los Daños y Perjuicios Extracontractuales en Puerto Rico, Publicaciones JTS, 1989, pág. 185. No puede ser de otro modo, pues ello implicaría que una persona estaría obligada a prever todos los posibles riesgos que podrían concebiblemente estar presentes en múltiples situaciones, imponiéndole así una responsabilidad absoluta. La prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa; y se requiere que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de una mera especulación o conjetura. Blás v. Hospital Guadalupe, 146 D.P.R. 247 (1998); Castro Ortiz v. Mun. de Carolina, 134 D.P.R. 783 (1994).
A raíz de lo anterior, precisa destacar que en esta jurisdicción, la persona que mantiene un establecimiento comercial abierto al público, debe mantener el local en condiciones de seguridad tales que no causen daños a los clientes. Soc. Gananciales v. G. Padín Co., Inc., 117 D.P.R. 94, 104 (1986). En otras palabras, corresponde al dueño de un negocio o a su propietario mantener el área al que tienen acceso sus clientes como un sitio seguro. Cotto v. C. M. Ins. Co., 116 D.P.R. 644, 650 (1985). Sin embargo, esa responsabilidad no es absoluta. El dueño del establecimiento [n]o es un asegurador de la seguridad de los clientes del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección. El demandante tendrá que probar que el dueño del establecimiento no ha ejercido el debido cuidado para que el local sea uno seguro. Rosado v. Supermercados Mr. Special, 130 D.P.R. 946 (1996). Así pues, corresponde a la paite demandante probar no sólo la existencia de una condición peligrosa en el local comercial, sino también que el dueño del establecimiento conocía esa condición o puede imputársele su conocimiento. Cotto v. C. M. Ins. Co., supra. En otras palabras, el demandante tiene que probar que su daño se debió a la existencia de una condición peligrosa, y que esa condición fue la que con mayor probabilidad ocasionó el daño, y que la misma era conocida por el demandado, o que debió conocerla. Colón González v. K-Mart, supra, a la pág. 1483.
Por su paite, corresponde a los tribunales de primera instancia evaluar la prueba presentada y determinar en *175 cada caso si (por preponderancia de la prueba) existía una condición peligrosa y si ésta era del conocimiento del dueño del establecimiento. Colón González v. K-Mart, supra.
III
Sobre el tema de la revisión judicial es norma claramente establecida que los foros apelativos no intervendremos con la apreciación y adjudicación de credibilidad que de la prueba testifical hizo el juzgador de hechos, a menos que un examen sereno, detallado y desapasionado de la prueba produzca en nuestro ánimo insatisfacción o intranquilidad de conciencia. López Vicil v. ITT Intermedia, Inc., 142 D.P.R. 857 (1997); Monllor Arzola v. Soc. de Gananciales, 138 D.P.R. 600 (1995). En ausencia de circunstancias extraordinarias, no alteraremos el valor, credibilidad y determinación que el juzgador de hechos le otorgó a la prueba.
Como dijéramos, es doctrina claramente establecida que las determinaciones de hechos, la apreciación de la prueba y adjudicación de credibilidad del tribunal sentenciador merecen gran deferencia y respeto de los foros apelativos. Corresponde al foro sentenciador aquilatar la prueba testifical ofrecida y dirimir credibilidad. Sin lugar a dudas el juez que vio y oyó la prueba, es quien en mejor posición está para creerla o no creerla. Los tribunales apelativos sólo intervendrán con las determinaciones de hechos y la adjudicación de credibilidad que hizo el Tribunal de Primera Instancia cuando se demuestre pasión, prejuicio o error manifiesto. Trinidad v. Chade. 153 D.P.R. _ (2001), 2001 J.T.S. 10.
IV
La apelante arguye que el tribunal de instancia incidió al restarle credibilidad a la prueba presentada por ésta y así concluir que no probó el acto negligente de Sam's Club. En el caso ante nuestra consideración, la apelante plantea un asunto de credibilidad dirigido a cuestionar las determinaciones de hechos que hiciera el foro de instancia en cuanto a lo que efectivamente aconteció el día del accidente. Dicho tribunal tuvo ante sí dos versiones sobre los hechos. De una parte, los testimonios de la perjudicada y aquí apelante y, de otra parte, los testimonios de los testigos de Sam's Club, a los cuales le confirió entera credibilidad. El Sr. Emilio García, empleado de la tienda Sam's Club, fésñficó a los efectos de quela apelante, al terminar el proceso de renovación de membresía, giró a la derecha sin tomar precaución de que la plataforma estaba en el área, y como resultado, tropezó con ésta y cayó al piso. Esta versión fue confirmada con el testimonio de la Sra. Jenny Gerena, quien fue la segunda testigo presentada por Sam's Club. Ambos testigos de la parte demandada coincidieron en que la plataforma fue llevada al lugar de renovación de membresía por el hijo de la apelante. En ese lugar, la apelante tropezó con dicha plataforma.
Según surge de la prueba presentada por Sam's Club, el Sr. García le advirtió sobre la presencia de la plataforma a la apelante. Posteriormente, éste brincó sobre el mostrador de membresía para socorrerla. Trasciende de la prueba presentada por la parte demandada que los empleados de la tienda Sam's Club, asistieron a la apelante y recalcaron la actitud hostil que asumió la apelante luego de su caída.
Por su parte, la apelante argumentó que ella desconocía quién había llevado el carro plataforma al área de renovación de membresía. Asimismo, la apelante alegó que su hijo se había marchado al área de electrónica y que se llevó consigo el “u-carf’ al igual que la cartera de la apelante. No obstante lo anterior, la apelante admitió en una deposición, que luego de la caída se recogieron las cosas de ella del piso, entre ellas su cartera, la cual en el momento de la caída tenía en sus manos. Véase, Moción, en Apéndice de autos. Del mismo modo, el foro apelado concluyó que la apelante faltó a la verdad en la información que brindó al Tribunal. Primeramente, indicó que sólo contaba con dos años de preparación académica y posteriormente, tuvo que admitir que tenía bachillerato y estudios de postgrado en Derecho. Ante ello, precisa destacar que la apelante en varias ocasiones se identificó como abogada, sin ésta estar debidamente licenciada para ejercer la abogacía. La Sra. Windy Berrios, testigo de la parte demandada, corroboró esta información sobre la identificación de la apelante como abogada. Además, testificó que poco tiempo después del incidente, ella se personó al área y le ofreció ayuda a la apelante. La Sra. Berrios indicó que contrario a lo alegado por la apelante, ésta no le requirió los servicios de una ambulancia. A su *176 vez, la Sra. Berrios precisó lo que posteriormente fue corroborado por la Sra. Gerena, que la plataforma medía entre cuatro a seis pies, contrario a lo señalado por la apelante, quien argüyó que la misma medía diez pies de largo.
Tomamos conocimiento de que, en un récord de la aseguradora PRAICO, la apelante omitió brindar información sobre accidentes previos. De igual forma, a preguntas de su propia abogada, la apelante indicó sobre su estado de salud, el cual calificó de excelente, y que nunca había tenido problemas previos. Sin embargo, del expediente de la aseguradora PRAICO, surge que la apelante estuvo envuelta en un accidente de auto. El propio perito de la parte apelante, durante su testimonio, lució incómodo y sorprendido cuando el tribunal lo puso en conocimiento del accidente previamente experimentado por la apelante y el cual evidentemente nunca le fue informado.
El Tribunal de Primera Instancia concluyó que la ocultación de datos importantes en este caso por parte de la apelante, tanto en su testimonio ante ese foro, como a sus peritos, abona a la falta de credibilidad de la apelante. De la prueba presentada por Sam's Club resulta evidente que la plataforma fue llevada al lugar por el hijo de la apelante, y que el carro estuvo todo el tiempo al lado de ésta, o en el área próxima a ella, por lo que resulta forzoso concluir que la apelante debía advertir la presencia de dicha plataforma. El tribunal de instancia estimó que la apelante no estaba ante un objeto de difícil percepción, sino ante una plataforma de cuatro a seis pies de largo, visible y ostensible. Convenimos con la determinación del foro a quo cuando establece que con la precaución de una persona prudente y razonable, el accidente no hubiese ocurrido. En los casos de daños y peijuicios, específicamente a consecuencia de caídas, el Tribunal Supremo ha señalado que la parte demandante deberá probar, como paite esencial de la causa de acción, la existencia de una condición peligrosa que alegadamente ocasionó la caída, y que dicha condición era de conocimiento de la parte demandada o que podría imputarse a ésta tal conocimiento. Maldonado v. Interamerican University, 104 D.P.R. 420 (1975). Huelga decir que en el caso de marras no existía tal condición de peligrosidad. Los testimonios vertidos en el juicio y aquilatados por el foro a quo sostienen que la apelante debió conocer la existencia de la plataforma. Coincidimos, a su vez, con lo establecido por el tribunal de instancia cuando éste afirma que la apelante no probó el acto negligente de la parte demandada. Advertimos que la apelante no pudo en ninguna ocasión presentar una respuesta lógica de cómo llegó la plataforma al área del mostrador. Por tanto, concluimos que el mero hecho de que acontezca un accidente, no da lugar a una inferencia de negligencia. Cotto v. C.M. Ins. Co., supra.
En el presente caso, el foro de instancia determinó que el accidente ocurrido a la apelante se debió a la exclusiva negligencia de ésta, al haber tropezado con la plataforma que su hijo había llevado al área de membresía. Distinguimos que los cairos plataformas son utilizados en el establecimiento comercial para uso de los clientes. Tampoco estamos ante una situación de descuido por paite de los empleados al haber dejado abandonada la plataforma en el área de membresía.
No existe justificación para descartar la apreciación de los hechos que hizo el Juez de instancia y substituirla con la apreciación de este Tribunal cuando fue el juzgador de instancia quien tuvo la oportunidad de tener contacto directo con los testigos y el resto de la prueba en el caso. La apelante no nos ha convencido de que en su apreciación de la prueba el Tribunal de Primera Instancia cometiera manifiesto error o actuara movido por pasión, prejuicio o parcialidad.
Para que prospere una acción de daños en nuestra jurisdicción, es preciso que el demandante demuestre, por preponderancia de prueba, la realidad del daño sufrido, la existencia de un acto u omisión negligente y, además, el elemento de causalidad. La suficiencia, contundencia o tipo de prueba presentada, así como el valor que los tribunales le darán, dependerá, naturalmente, de las circunstancias particulares de cada caso de conformidad con nuestro derecho probatorio. Sin embargo, la prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa. Se requiere, además, que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de mera especulación o conjetura. *177 Castro Ortiz v. Man. de Carolina, 134 D.P.R. 783 (1993).
No surge de la sentencia emitida por el foro apelado indicio alguno de pasión, parcialidad o error manifiesto; por tanto, debemos abstraemos de intervenir con la apreciación hecha por dicho tribunal. Rolón v. Charlie Rental Car, Inc., 148 D.P.R. 420 (1999).
V
En torno a la imposición de honorarios de abogado por temeridad, precisamos que la materia está regulada en las Reglas 44.1 (d) y 44.3 (b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, R. 44.3. La Regla 44.1 (d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1 (d), establece que en caso de que cualquier parte haya procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado que el tribunal entienda corresponde a tal conducta. La condena al pago de honorarios de abogado e intereses por temeridad tiene el propósito de penalizar o sancionar a las partes que por temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a otra parte a asumir y sufrir molestias, gastos, trabajo e inconveniencias de un litigio innecesario. Miranda v. E.L.A., 137 D.P.R. 700 (1994). Al interpretar la Regla 44.1 (d), supra, el Tribunal Supremo de Puerto Rico, en Fernández v. San Juan Cement., Inc., 118 D.P.R. 713 (1987), estableció que existe temeridad en las siguientes situaciones:

“(1) hacer necesario un pleito que se pudo evitar;

(2) prolongar innecesariamente un pleito;

(3) causar que otra parte incurra en gestiones evitables;

(4) contestar el demandado una demanda y negar su responsabilidad total, aunque la acepte posteriormente;

(5) defenderse el demandado injustificadamente de la acción;

(6) si el demandado en efecto cree la cantidad reclamada es exagerada y esa es la única razón que tiene para oponerse a las peticiones del demandante y no admite francamente su responsabilidad, limitando la controversia a la fijación de la cuantía a ser concedida;

(7) si el demandado se arriesga a litigar un caso del que se desprendía prima facie su negligencia, y

(8) negar un hecho que le consta es cierto al que hace la alegación. ”

Ahora bien, determinada la existencia de temeridad, la condena de honorarios es imperativa. Una partida de honorarios de abogado concedida por un Tribunal de Primera Instancia no será variada en apelación a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339, 350 (1989).
El concepto de temeridad no está definido en la Regla 44.1 (d), supra. No obstante, la jurisprudencia del Tribunal Supremo de Puerto Rico aclara que la temeridad consiste en: “[Ujna actitud que se proyecta sobre el procedimiento y que afecta el buen funcionamiento y la administración de la justicia. También sujeta al litigante inocente a la ordalía del proceso judicial y lo expone a gastos innecesarios y a la contratación de servicios profesionales, incluyendo abogados, con el gravamen a veces exorbitante para su peculio.” Blas v. Hosp. Guadalupe, 146 D.P.R. 267, 334 (1998). En términos generales, “se considera temeraria toda aquella conducta que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente o requiera a la otra parte efectuar gestiones innecesarias. ” Torres Ortiz v. E.L.A., 136 D.P.R. 556, 565 (1994).
*178 El propósito de la imposición de honorarios de abogado en casos de temeridad es: "establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." Fernández v. San Juan Cement Co, Inc., supra, a la pág. 718. Además, la imposición de honorarios de abogado, como la de interés presentencia, tiene como propósito disuadir la litigación innecesaria y alentar las transacciones mediante la imposición de sanciones a la parte temeraria para compensar los perjuicios económicos y las molestias sufridas por la otra parte.
En Corpak, Inc. y Art Printing, Inc. v. Ramallo Brothers, 125 D.P.R. 724, 738 (1990), el Tribunal Supremo había señalado que: "deberá mantenerse presente que el grado o intensidad de la conducta temeraria o frívola es el criterio o factor determinante y crítico que tienen que tomar en consideración dichos tribunales al determinar la cuantía de los honorarios de abogado a imponerse a la parte perdidosa que ha actuado con temeridad o frivolidad."
El Tribunal de Primera Instancia tuvo el convencimiento de que este caso se trató de una reclamación forzada por la parte apelante. El foro apelado consideró que la apelante no estuvo dispuesta a considerar una alternativa de transacción. A raíz de lo anterior, el tribunal consideró que tal actitud de soberbia, temeridad y frivolidad justificó la imposición de honorarios de abogado en este caso. El tribunal de instancia llamó la atención a que la litigación en este caso tomó seis años, a pesar de que la apelante conocía lo lacónico de su prueba. Nada en el expediente apelativo nos mueve a pensar que el tribunal de instancia abusó de su discreción al imponerle honorarios de abogado por temeridad a la parte apelante.
Dicha decisión no será revisada por este Tribunal a menos que el tribunal sentenciador haya cometido un abuso de discreción, lo cual corresponde a la parte apelante demostrar. CNA Casualty de P.R. v. Torres Díaz, 141 D.P.R. 27 (1996).
Sabido es, también, que la partida de honorarios de abogado concedida no se variará en apelación, a menos que la misma sea excesiva, exigua o constituya un abuso de discreción. Ramírez Anglada v. Club Cala de Palmas, 123 D.P.R. 339 (1989).
VI
Por los fundamentos expresados anteriormente, confirmamos la Sentencia apelada.
Lo acuerda y manda este Tribunal y lo certifica la Secretaria del Tribunal.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones