Ex Policía Israel Rivera Rivera, apelante, *v.* Superinten-
dente de la Policía de Puerto Rico y la Comisión de Inves-
tigación, Procesamiento y Apelación, apelados.

*Número:* AA-96-4        *Resuelto:* 30 de junio de 1998

*Miguel R. Calderón Rivera*, abogado del apelante; *Edda Serrano Blasini, Subprocuradora General*, y *María Astrid Hernández Martín, Procuradora General Auxiliar*, abogadas de los apelados.

El Juez Asociado Señor Rebollo López emitió la opinión del Tribunal.

Revisamos, vía apelación,(¹) una resolución de la Comisión de Investigación, Procesamiento y Apelación (en adelante C.I.P.A.) dictada el 5 de octubre de 1995. Mediante la misma, dicha agencia administrativa confirmó la determinación del Superintendente de la Policía de Puerto Rico de expulsar permanentemente de dicho Cuerpo al apelante Israel Rivera Rivera. Confirmamos.

## I

El 3 de octubre de 1994, personal del Instituto de Ciencias Forenses tomó muestras de orina a un grupo de miembros de la Policía de Puerto Rico, entre los que se encontraba el apelante Rivera Rivera, con el fin de detectar la presencia de sustancias controladas.(²) El muestreo se llevó a cabo en el tercer piso del Cuartel General de la Policía de Puerto Rico monitoreado por el Sr. Denis Núñez Salas, quien recibió trescientas diecinueve (319) muestras de orina correspondientes al mismo número de miembros de la fuerza policiaca del País.

Según surge de las determinaciones de hecho contenidas en el Informe del Oficial Examinador de la Policía de Puerto Rico, que presidió la vista administrativa celebrada con anterioridad a la expulsión decretada, el 17 de marzo

---

(¹) Acogemos esta apelación al amparo de la Ley de la Judicatura de Puerto Rico de 1994, Plan de Reorganización Núm. 1a de la Rama Judicial de 28 de julio de 1994 (22 L.P.R.A. sec. 22 *et seq.*), antes de ser enmendada por la Ley Núm. 248 de 25 de diciembre de 1995 (4 L.P.R.A. secs. 22i–22k, 22n–22p, 23f y 23n). El Art. 3.002(e) de dicha ley, 4 L.P.R.A. sec. 22i(e), disponía que el Tribunal Supremo revisaría, mediante recurso de apelación, las decisiones, resoluciones y providencias dictadas por organismos, funcionarios y agencias administrativas y por subdivisiones políticas del Estado Libre Asociado de Puerto Rico.

(²) Dicha acción se realizó al amparo de la Orden Ejecutiva del Gobernador del Estado Libre Asociado de Puerto Rico, promulgada el 9 de octubre de 1986 y contenida en el Boletín Administrativo Núm. 4784, la cual autoriza, en su Art. 4, al Instituto de Ciencias Forenses a establecer un procedimiento de pruebas para detectar la presencia de sustancias controladas en los empleados y funcionarios especificados en su Art. 2, entre los que se encuentran los miembros de la Policía de Puerto Rico.

de 1995(³) el apelante entregó su muestra a las 4:00 P.M. La misma fue entregada al monitor del control por el propio apelante, tras haber éste escrito sus iniciales en el frasco. La referida muestra fue sellada, identificada con el número de control E/P-87119 y cotejada con la hoja de control por el monitor encargado.(⁴)

El 7 de octubre el Sr. José Rivera, técnico de laboratorio del Instituto de Ciencias Forenses, analizó la muestra entregada por el apelante y el análisis arrojó un resultado positivo a cocaína y metabolito de cocaína (henzoylecgonina). Dicho resultado fue corroborado por la Sra. Luz Elena Droz Santiago, Química y Auxiliar de la Directora del Laboratorio, mediante la prueba de espectometría de masa y cromatografía de gas. Surge de las determinaciones de hecho realizadas que, al momento de tomarse al apelante la muestra analizada, éste estaba ingiriendo medicamentos, consistentes los mismos en tetraciclina y otros antibióticos. De las declaraciones vertidas en la vista administrativa surgió, sin embargo, que ninguno de dichos medicamentos pudo alterar ni afectar, en ningún modo, el resultado de las pruebas realizadas.

Como consecuencia del resultado positivo de la prueba de sustancias controladas realizada al apelante, el Superintendente de la Policía le notificó, mediante carta de 26 de octubre de 1994, su decisión de *suspenderlo sumariamente* de su empleo desde la fecha de recibo de la comunicación. Ello a base de que los hechos reseñados en la carta(⁵) constituían una violación a las disposiciones del Reglamento Núm. 4216 de Personal de la Policía de Puerto Rico de 4 de

---

(³) Tales determinaciones de hecho fueron acogidas en su esencia por la C.I.P.A. en su Resolución de 5 de octubre de 1995, la cual se halla hoy bajo nuestra consideración.

(⁴) De los datos que preceden, así como de las declaraciones vertidas en la vista administrativa celebrada el 17 de marzo de 1995, el Oficial Examinador concluyó en su informe que "existía la certeza absoluta que la muestra que se analizó fue la que entregó el [guardia] Rivera Rivera".

(⁵) Tales hechos reseñados en la Carta de 26 de octubre de 1994 coinciden, en su esencia, con los expuestos en nuestra Sentencia.

mayo de 1981, según enmendado:[6] Art 14, Sec. 14.5, faltas graves 15 y 27, y Art. 5, Sec. 5.2, referente a los deberes y las responsabilidades, en sus incisos (3), (5) y (9).[7]

El 10 de noviembre de 1994, el apelante recibió la misiva que le comunicaba la suspensión sumaria del Cuerpo a partir de ese momento. De inmediato, el 22 de noviembre y dentro del término reglamentario de quince (15) días laborables, solicitó la celebración de una vista administrativa. En el entretanto, continuó la investigación administrativa a cargo del Oficial Investigador, el Sr. Alejandro Marrero Matta, quien el 25 de enero de 1995 sometió a la consideración del Superintendente Auxiliar en Inspección y Asuntos Disciplinarios un informe que establecía que habían sido probados los cargos que sirvieron de fundamento para la suspensión sumaria del apelante. A base de dicho informe, el Superintendente Auxiliar recomendó al Superintendente de la Policía, mediante comunicación de 6 de febrero de 1995, la *expulsión definitiva* del Cuerpo.

A tenor con todo lo anterior, el 31 de marzo de 1995 el

---

[6] 25 R.P.R. sec. 1401 *et seq.*

[7] Los artículos citados del Reglamento de Personal de la Policía de Puerto Rico de 4 de mayo de 1981, leen como sigue:

Art. 14, Sec. 14.5:

"Se considerarán faltas graves las siguientes:

.    .    .    .    .    .    .    .    .

"15. Usar drogas, tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa.

.    .    .    .    .    .    .    .    .

"27. Observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía." 25 R.P.R. sec. 1449. Reglamento de Personal, ante, págs. 100–103.

Art. 5, Sec. 5.2:

"Dentro de la esfera de sus atribuciones, todo miembro de la Fuerza tendrá entre otras, las siguientes obligaciones y responsabilidades:

.    .    .    .    .    .    .    .    .

"3. Cumplir y velar por el cumplimiento de las leyes, reglamentos y ordenanzas municipales.

.    .    .    .    .    .    .    .    .

"5. Observar en todo momento una conducta ejemplar.

.    .    .    .    .    .    .    .    .

"9. Obedecer las órdenes legalmente emitidas por sus superiores." 25 R.P.R. sec. 1404. Reglamento de Personal, ante, págs. 14–15.

Superintendente de la Policía comunicó al apelante su decisión de *expulsarlo permanentemente* del puesto que éste ocupaba en la Policía con efecto retroactivo a la fecha de la suspensión sumaria, es decir, al 10 de noviembre de 1994.

Inconforme con esta resolución del Superintendente de la Policía, el apelante radicó petición de revisión ante la C.I.P.A. el 11 de mayo de 1995. Alegó, en síntesis, violación a su derecho a no ser privado de su propiedad sin un debido proceso de ley y al Art. 3(b) de la Orden Ejecutiva emitida por el Gobernador de Puerto Rico el 9 de octubre de 1986, contenida en el Boletín Administrativo Núm. 4784, sobre la administración de pruebas para detectar el uso de sustancias controladas en funcionarios y empleados públicos.[8]

El 5 de octubre de 1995 la C.I.P.A. emitió resolución confirmando la determinación del Superintendente de la Policía, por considerar probadas las faltas graves imputadas al apelante, a saber, la violación del Art. 14, Sec. 14.5(15) y (27) del Reglamento de Personal de la Policía de Puerto Rico, ante. Inconforme con tal resolución, el 21 de noviembre de 1995 el apelante radicó Moción de Reconsideración ante la C.I.P.A., utilizando como fundamento, nuevamente, el texto ya no vigente del Art. 3(b) de la Orden Ejecutiva del Boletín Administrativo Núm. 4784. El 6 de diciembre de 1995, la C.I.P.A. denegó la moción de reconsideración presentada y así lo notificó el 8 del mismo mes.

Inconforme con tales resoluciones, el apelante acudió ante nos, el 9 de enero de 1996, alegando haber errado la C.I.P.A.

"... al confirmar la resolución de expulsión del apelante como miembro de la Policía de Puerto Rico, *por ser dicha expulsión*

---

[8] Cabe resaltar que, a la fecha de los hechos, el artículo alegado había sido enmendado, en lo pertinente a la reclamación por la Orden Ejecutiva del Gobernador contenida en el Boletín Administrativo Núm. 5111-A de 26 de mayo de 1988. Sin embargo, el apelante fundamenta su posición en el referido artículo tal como constaba con anterioridad a la enmienda.

*una contraria a la política pública de rehabilitación sobre el uso de sustancias controladas.*" (Énfasis suplido.) Petición, pág. 3.

Contando con el beneficio de la comparecencia de ambas partes, y estando en condiciones de resolver el recurso radicado, procedemos a así hacerlo.

## II

La Ley de la Policía de Puerto Rico aplicable a los hechos, Ley Núm. 26 de 22 de agosto de 1974, según enmendada,(⁹) 25 L.P.R.A. ant. sec. 1001 *et seq.*, establecía como objetivo y obligación básica de este Cuerpo, "proteger a las personas y a la propiedad, mantener y *conservar el orden público*, observar y procurar la más absoluta protección de los derechos civiles del ciudadano, *prevenir, descubrir y perseguir el delito* y, dentro de la esfera de sus atribuciones, *compeler obediencia a las leyes* y ordenanzas municipales, y reglamentos que conforme a ésta se promulguen". (Énfasis suplido.)(¹⁰)

Por otro lado, la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. sec. 1301 *et seq.*, establece, como política pública del Estado Libre Asociado de Puerto Rico, que el principio de mérito debe regir el sistema de servicio público, *de forma que todos los empleados se hallen capacitados física y mentalmente para desempeñar sus funciones.*(¹¹)

En ese contexto, y tomando como fundamento las dos (2) disposiciones anteriores, el ex Gobernador de

---

(⁹) La citada ley es la aplicable al caso de autos puesto que era la vigente al momento de los hechos. Sin embargo, cabe resaltar que la misma fue derogada y sustituida por la Ley Núm. 53 de 10 de junio de 1996 (25 L.P.R.A. sec. 3101 *et seq.*), vigente en la actualidad.

(¹⁰) Art. 3 de la Ley Núm. 26 de 22 de agosto de 1974, según enmendada, 25 L.P.R.A. sec. 1003 (ed. 1979).

(¹¹) Sec. 2.1 de la Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. sec. 1311.

Puerto Rico, Rafael Hernández Colón, aprobó, el 9 de octubre de 1986, una orden ejecutiva dirigida a decretar y reglamentar la administración de pruebas tendentes a detectar el uso de sustancias controladas por determinados funcionarios públicos encargados de velar por el orden y la seguridad públicos del Estado. Dicha orden fue publicada en el Boletín Administrativo Núm. 4784 de 9 de octubre de 1986. La exposición de motivos de la referida orden tomó en consideración la gravedad del problema del uso y tráfico ilegal de sustancias controladas en Puerto Rico y estableció la necesidad de combatir el mismo. *En específico se entendió que el uso de drogas por los miembros de las fuerzas de seguridad, no sólo sería contrario al principio de mérito que rige todo el servicio público, sino que podría representar un grave riesgo para la seguridad de la ciudadanía, menoscabaría la diligencia y el cuidado que requieren estos puestos y convertiría a tales personas en sujetos vulnerables a influencias indebidas y a otras actuaciones impropias e ilegales.*(12)

---

(12) En específico, la exposición de motivos de dicha Orden establecía, entre otros, los siguientes fundamentos acreditativos de la necesidad de la regulación instituida:

"POR CUANTO: La política pública y el compromiso de esta Administración es *combatir el grave problema del uso, abuso y tráfico ilegal de sustancias controladas* dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico en atención a la magnitud y la proporción alarmante que este mal ha alcanzado, ...

"POR CUANTO: *Sería incompatible con* las más estrictas normas de *excelencia, integridad y eficiencia* que rigen el servicio público y con el estado de *salud mental y físico de empleados y funcionarios públicos el uso ilegal de sustancias controladas por* éstos.

"POR CUANTO: El uso ilegal de sustancias controladas por funcionarios y empleados gubernamentales en el área de seguridad pública representaría un *grave riesgo para la seguridad* de sus compañeros de trabajo y la ciudadanía en general.

"POR CUANTO: El uso ilegal de sustancias controladas por funcionarios y empleados encargados de llevar a cabo la investigación y procesamiento de actividades criminales y de mantener el orden público menoscabaría la idoneidad, disposición, agilidad, prontitud, diligencia y el cuidado con que tienen que desempeñar estas delicadas tareas y les convertiría en sujetos vulnerables a coacción, influencia indebida y a otras actuaciones impropias e ilegales, lo que representaría un riesgo para la seguridad pública y para el fiel desempeño de sus funciones.

"POR CUANTO: Es, además, la política pública de esta Administración establecer un plan de acción y los programas preventivos necesarios para atender, reducir y solucionar el uso y abuso de sustancias controladas y para la orientación, tratamiento y rehabilitación de las personas afectadas ...." (Énfasis suplido.) Orden Eje-

En el contexto de los objetivos señalados, el Art. 3(b) de la Orden Administrativa Núm. 4784, ante, págs. 5–6, *establecía* lo siguiente:

> (b) El objetivo principal del programa será identificar a los usuarios de sustancias controladas y lograr su rehabilitación para que puedan desempeñar fielmente sus funciones y deberes en el servicio público. *Cuando se obtenga por primera vez un resultado positivo corroborado en un empleado o funcionario mediante una prueba para detectar la presencia de sustancias controladas, éste será referido al programa de orientación, tratamiento y rehabilitación establecido en el Artículo 5 de esta Orden y no se tomarán medidas disciplinarias en su contra.* Tampoco se tomarán medidas disciplinarias contra el funcionario o empleado que voluntariamente se someta al programa de orientación, tratamiento y rehabilitación del Departamento de Servicios Contra la Adicción, se rehabilite y se abstenga de usar ilegalmente sustancias controladas. El Jefe de la agencia solo [sic] iniciará acciones disciplinarias cuando el empleado o funcionario se niegue a participar en el programa de orientación, rehabilitación y tratamiento establecido en el Artículo 5 de esta Orden Ejecutiva o a someterse a las pruebas para detectar la presencia de sustancias controladas o cuando continúe usando ilegalmente sustancias controladas. (Énfasis suplido.)

La letra de esta disposición *era* clara: no se impondrían medidas disciplinarias a ningún empleado por el uso de sustancias controladas *cuando se le hubiera detectado el mismo por primera vez*. En tales casos, en virtud de la política pública de rehabilitación de los consumidores de drogas señalada en la exposición de motivos, se debía referir al funcionario a un programa de tratamiento y rehabilitación específicamente creado a esos efectos. No cabe duda de que, bajo la letra de esta disposición, el apelante del caso de autos debería haber sido referido a tal programa de rehabilitación y no deberían haberse tomado medidas disciplinarias en su contra; ello, debido a que el resultado positivo que ofrecieron las pruebas realizadas era el primero que se le detectaba.

---

cutiva de 9 de octubre de 1986, publicada en el Boletín Administrativo Núm. 4784, págs. 2–3.

■ *Ahora bien*, precisamente la parte de la disposición que hubiese exigido esa solución *fue enmendada con anterioridad a la ocurrencia de los hechos del caso que ocupa nuestra atención*, mediante una Orden Ejecutiva de 26 de mayo de 1988, y contenida en el Boletín Administrativo Núm. 5111-A. En la exposición de motivos de tal orden se consideró necesario "autorizar a los jefes de las agencias gubernamentales a tomar *medidas disciplinarias apropiadas* contra un funcionario o empleado que obt[uviera] un resultado positivo corroborado en las pruebas para detectar la presencia de sustancias controladas, *cuando ello [fuera] incompatible con el desempeño efectivo de las funciones y los deberes del puesto que ocup[e] dicho funcionario o empleado*". (Énfasis suplido.) Íd., pág. 3. Es decir, se consideró necesario dotar a los jefes de las agencias de la discreción para determinar cuándo el uso de drogas, aunque fuera por primera vez detectado, era incompatible con la naturaleza del empleo y, en tales casos, se les autorizó a imponer las medidas disciplinarias previstas por las leyes y reglamentos aplicables. A base de esta consideración, se enmendó el Art. 3(b) de la Orden de 9 de octubre de 1986 para que leyera del siguiente modo:

El objetivo principal del programa será identificar a los usuarios de sustancias controladas y *en la medida que sea posible* lograr su rehabilitación para que puedan desempeñar fielmente sus funciones y deberes en el servicio público. Cuando se obtenga por primera vez un resultado positivo corroborado en un empleado o funcionario mediante una prueba para detectar la presencia de sustancias controladas, éste será referido al programa de orientación, tratamiento y rehabilitación establecido en el Artículo 5 de esta Orden y no se tomarán medidas disciplinarias en su contra, *excepto cuando la condición detectada resulte incompatible con el desempeño efectivo de las funciones y deberes del puesto que ocupa, en cuyo caso el Jefe de la agencia podrá proceder a imponer la medida disciplinaria que entienda apropiada conforme a la reglamentación aplicable.* No se tomarán medidas disciplinarias contra el funcionario o empleado que voluntariamente se someta al programa de orientación, tratamiento y rehabilitación del Departamento de Servicios

contra la Adicción, se rehabilite y se abstenga de usar ilegalmente sustancias controladas, *cuando el Jefe de la agencia determine que tal condición no es incompatible con el mejor desempeño de los deberes correspondiente al cargo o empleo.* El Jefe de la agencia podrá iniciar acciones disciplinarias cuando el empleado o funcionario se niege [sic] a participar en el programa de orientación, rehabilitación y tratamiento establecido en el Artículo 5 de esta Orden Ejecutiva o a someterse a las pruebas para detectar la presencia de sustancias controladas o cuando continúe usando ilegalmente sustancias controladas. (Énfasis suplido.)[13] Boletín Administrativo Núm. 5111-A, ante, pág. 4.

Como se puede apreciar, *esta enmienda eliminó la prohibición absoluta que impedía que el jefe de la agencia tomara medidas disciplinarias contra un empleado que arrojara, por primera vez, resultados positivos en las pruebas de control de uso de sustancias controladas.* La enmienda introduce la *potestad* del jefe de la agencia para tomar las medidas disciplinarias que correspondan contra el funcionario que dio resultados positivos en tales pruebas, aun cuando fuera por primera vez; pero ello, únicamente, cuando la condición detectada resultare incompatible con el desempeño efectivo de las funciones y deberes del puesto que ocupa.[14]

---

[13] Hemos destacado mediante subrayado las importantes matizaciones introducidas en la disposición al amparo de la consideración de que era necesario autorizar a los jefes de las agencias gubernamentales a tomar las medidas disciplinarias apropiadas contra los funcionarios que ofrezcan resultados positivos en sus pruebas de sustancias controladas cuando tal uso sea incompatible con la naturaleza del cargo.

[14] El 14 de agosto de 1997 se aprobó la Ley Núm. 78 (3 L.P.R.A. sec. 2501 *et seq.*) que requiere pruebas para la detección de sustancias controladas como requisito previo a la obtención de un empleo en las agencias del Gobierno de Puerto Rico. Esta ley es acorde a la norma que incorporó la Orden Ejecutiva de 26 de mayo de 1988 publicada en el Boletín Núm. 5111-A, ya que en su Art. 14(b)(1), 3 L.P.R.A. sec. 2511(b)(1), establece:

"(b) No se podrá despedir o destituir a un funcionario o empleado del puesto o cargo que ocupa por arrojar un resultado positivo corroborado en la prueba inicial para la detección de sustancias controladas. No obstante, a modo de excepción, se podrá despedir o destituir al funcionario o empleado:

"(1) Cuando por la propia naturaleza del empleo, la condición detectada resulte irremediablemente incompatible con el desempeño efectivo de las funciones y deberes del puesto o cargo.

Al amparo de toda la normativa analizada y en virtud de la facultad que el Reglamento de Personal de la Policía le concede,([15]) el Superintendente de la Policía de Puerto Rico aprobó, el 1ro de abril de 1990, la Orden General Núm. 90-1, *la cual está dirigida a regular específicamente el procedimiento para detectar la presencia de sustancias controladas en los empleados de la Policía.* Tanto su exposición de motivos como la descripción de la política pública que se pretende implementar abundan en las consideraciones tomadas para la aprobación de las órdenes ejecutivas del Gobernador contenidas en los Boletines Núms. 4784 y 5111-A.

El Superintendente, en la mencionada orden, describe con claridad las razones que hacen necesario un control riguroso del uso de sustancias controladas en el Cuerpo de la Policía. Básicamente se hace referencia a dos (2) cuestiones: *por un lado,* siendo tal Cuerpo el encargado de hacer cumplir las leyes relativas a las sustancias controladas, es necesario que todos sus miembros estén libres del uso de las mismas; *por otro lado,* en atención al principio de capacidad y mérito que permea todo el servicio público, es necesario que los miembros de la Policía se hallen siempre en plenas capacidades físicas y mentales para cumplir con las relevantes funciones y deberes que tienen asignados, y ello exige que estén libres del uso de sustancias controladas. En palabras textuales de la exposición de motivos:

El uso de sustancias controladas por empleados de la Policía

---

"*Se declara irremediablemente incompatible con el uso de sustancias controladas, todo puesto o cargo en cualesquiera de las Agencias y Programas de Seguridad Pública.*" (Énfasis suplido.)

([15]) Específicamente, la Sec. 22.1 del Reglamento de Personal de la Policía de Puerto Rico, ante, pág. 174, establece:

"*El Superintendente de la Policía de Puerto Rico queda facultado para disponer,* organizar, ordenar, reglamentar y controlar la confección de Manuales de Procedimientos, Instrucciones, Ordenes Administrativas, *Ordenes Generales* y/o Especiales *para desarrollar la política administrativa y cualquier otro asunto necesario para el mejor y más eficiente funcionamiento de la Policía de Puerto Rico,* las cuales se conformará[n] a lo dispuesto en la Ley de Personal; la Ley de la Policía de Puerto Rico y sus respectivos Reglamentos." (Énfasis suplido.)

de Puerto Rico puede frustrar seriamente los esfuerzos de la Agencia para hacer cumplir las leyes de drogas controladas y otras dirigidas a preservar el orden y la seguridad pública. El uso de sustancias controladas por un empleado de la Agencia que fue reclutado para combatirlas proyecta duda sustancial sobre su habilidad para realizar su tarea con vigor y honestidad, y mina la confianza del público en la integridad del servicio.

Por tal razón y por el peligro que representa el uso de drogas por un empleado de la Policía, tanto para la ciudadanía como para los compañeros de trabajo, y para su persona, se crea el Programa de Administración de Pruebas para Detectar la Presencia de Sustancias Controladas en el personal de la Policía.([16])

De la lectura de todos los fundamentos señalados en la exposición de motivos de la Orden General Núm. 90-1, se desprende con claridad que el Superintendente de la Poli-

---

([16]) La propia exposición de motivos establece, además, que:

"Este Programa enfatiza la responsabilidad de la Policía como Agencia para asegurar un equipo de trabajo libre de drogas. Se justifica el establecimiento de este Programa por las siguientes razones:

"1. *Segurid* [sic] *pública*: La función y actividades policíacas, tales como, uso de armas de fuego, persecución motorizada y otras actividades que requieren discernimiento y habilidad se tornan sumamente peligrosas cuando el empleado que las realiza usa drogas.

"2. *Confianza del público e integridad*: La posesión de drogas ilícitas por empleados de la Policía u otras personas, constituye delito en nuestra jurisdicción. El quebrantamiento de la Ley implica pérdida de confianza del Pueblo en nuestros servidores públicos.

"3. *Potencial para corrupción*: Un empleado de la Policía que usa drogas tiene que asociarse con criminales para conseguir la droga, tal asociación puede ser la base para extorsionarlo.

"4. *Presentación de testimonio con credibilidad*: Un usuario de drogas ilícitas puede estar sujeto a impugnación como violador de la ley cuando vaya a declarar como testigo.

"5. *Seguridad y moral de los compañeros de trabajo*: La Agencia tiene la obligación de asegurar a sus empleados que los compañeros de trabajo pueden servir como acompañantes o refuerzos de una manera efectiva y confiable, un usuario de drogas no impartiría sentido de seguridad.

"6. *Pérdida de productividad*: El uso de drogas por los empleados de la Policía puede resultar en alto ausentismo, lesionando el trabajo, resultando en aumentos en el costo de los servicios policíacos a los contribuyentes.

"7. *Responsabilidad civil*: La Agencia puede resultar responsable legalmente si sabía, o debió saber, que un empleado, como resultado del uso de drogas, presentaba un riesgo de causar daño a otros. La responsabilidad puede estar basada en negligencia al no atender con diligencia los casos de empleados con problemas de drogas, o en el establecimiento de procedimientos inadecuados para asegurar que los mismos estén aptos para el servicio. ..." (Énfasis suplido.)

cía consideró que el uso de sustancias controladas por miembros de la Policía, aun cuando fuera detectado por primera vez, resulta incompatible con el desempeño efectivo de las funciones y deberes de dicho Cuerpo. Como reconocimos anteriormente, el Boletín Núm. 5111-A faculta a los jefes de las agencias para imponer medidas disciplinarias a los funcionarios que usen sustancias controladas por primera vez, cuando ello resulte incompatible con la naturaleza del cargo. *A base de esa disposición, el Superintendente de la Policía estableció en el apartado I de la Orden General Núm. 90-1 que las faltas, medidas disciplinarias y procedimientos contenidos en la Ley y el Reglamento de Personal de la Policía serían aplicables a los miembros del Cuerpo que arrojaran un resultado positivo en la prueba de sustancias controladas.*[17]

El Superintendente *no* diferenció entre policías que dieran positivo por primera vez y aquellos otros que tuvieran un patrón de uso de sustancias controladas. De este modo, el artículo permite que se impongan medidas disciplinarias a los empleados de la Policía que arrojen un resultado positivo en la prueba de sustancias controladas por primera vez; como adelantáramos, ello es consecuencia de las consideraciones vertidas en la exposición de motivos al efecto de que resulta completamente incompatible con el correcto desarrollo de las funciones y deberes del cargo de Policía cualquier uso de sustancias controladas. *Ello, a nuestro juicio, no resulta ser irrazonable.*

---

[17] El apartado I de la Orden General 90-1 aprobada por el Superintendente de la Policía establece lo siguiente:

"1. Las faltas, medidas disciplinarias y procedimientos contenidos en la Ley y en el Reglamento de Personal de la Policía de Puerto Rico serán aplicables a los empleados de la Policía que arrojen un resultado positivo en la prueba de sustancias controladas, se negaren a someterse a la misma, o abandonaren el tratamiento al cual fueran referidos o no asistieren. La sanción a aplicarse será expulsión o destitución según corresponda."

## III

El Art. 4 de la Ley de la Policía, 25 L.P.R.A. ant. sec. 1004, aplicable al presente caso, creó la figura del Superintendente de la Policía de Puerto Rico. Dicho artículo establecía que "la administración y dirección inmediata de la organización [de la Policía de Puerto Rico] estaría a cargo del Superintendente". Íd. Así mismo, disponía que "[e]l Superintendente determina[ría] por Reglamento la organización funcional de la Policía". Íd. En ese sentido, el Art. 7 de la misma ley, 25 L.P.R.A. sec. 1007 (ed. 1979), disponía, en lo pertinente:

> *El Superintendente queda facultado para determinar por Reglamento* la organización y administración de la Policía, *las obligaciones, responsabilidad y conducta de sus miembros y cualquier otro asunto necesario para el funcionamiento del Cuerpo.* ... El Superintendente queda autorizado para introducir enmiendas al Reglamento siguiendo las mismas normas y procedimientos anteriormente establecidos para la aprobación del mismo. (Énfasis suplido.)

Tomando como base legal el artículo anterior y las Secs. 5.7 y 5.13 de la Ley de Personal del Servicio Público de Puerto Rico,[18] 3 L.P.R.A. secs. 1347 y 1353, el Superintendente aprobó el Reglamento de Personal de la Policía de Puerto Rico.[19] Ejerciendo su facultad para regular las obligaciones, responsabilidades y conducta de los miembros de la Policía, el Superintendente incorporó en el Reglamento de Personal diferentes secciones relativas al procedimiento disciplinario. Así, la Sec. 14.3(2)(a) dispone lo siguiente:

> *El Superintendente tomará las medidas correctivas apropiadas cuando un miembro de la Policía de Puerto Rico incurra en*

---

[18] Ley Núm. 5 de 14 de octubre de 1975, según enmendada.

[19] Reglamento de Personal de la Policía, ante. La exposición de motivos del citado reglamento dispone que el propósito del mismo es "propiciar el desempeño eficiente de las funciones asignadas a la Policía de Puerto Rico garantizando una administración de personal basada en el principio de mérito". Íd., pág. 2.

*violación de cualquiera de las faltas clasificadas en graves o leves.* El castigo a imponerse por falta grave podrá ser uno de los siguientes: expulsión del Cuerpo, degradación o suspensión de empleo y sueldo por un período no mayor de cinco (5) meses .... 25 R.P.R. sec. 1447. Reglamento de Personal de la Policía, ante, pág. 96.

Por su lado, la Sec. 14.5 del Reglamento, ante, págs. 100–108, identifica cincuenta y cuatro (54) faltas graves, entre las cuales se encuentran las imputadas al apelante:

15. *Usar drogas,* tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa. Íd., pág. 102.
27. *Observar una conducta* lesiva, inmoral o desordenada *en detrimento del Cuerpo de la Policía.* (Énfasis suplido.) 25 R.P.R. sec. 1449. Íd., pág. 103.

■ El propio Reglamento de Personal, en su Sec. 22.1, concede al Superintendente la facultad para aprobar las órdenes administrativas, órdenes generales o especiales necesarias para conseguir el mejor y más eficiente funcionamiento de la Policía de Puerto Rico; siempre acordes a la Ley de la Policía de Puerto Rico, la Ley de Personal del Servicio Público de Puerto Rico y sus respectivos reglamentos. De acuerdo con esta disposición, el Superintendente aprobó la Orden General Núm. 90-1, donde estableció que la sanción aplicable a aquellos miembros de la Policía que arrojen un resultado positivo en las pruebas de sustancias controladas es la expulsión. Como ya hemos discutido, esta disposición no es contraria a la ley ni al Reglamento de la Policía de Puerto Rico; tampoco lo es a la Ley de Personal del Servicio Público de Puerto Rico.[20]

---

[20] El Art. 4.6 de la Ley de Personal de Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1336), dispone en su apartado 3:

"Cuando la conducta de un empleado no se ajuste a las normas establecidas, cada agencia deberá tomar las medidas correctivas necesarias. Entre otras medidas se podrán considerar la amonestación verbal, las reprimendas escritas, las suspensiones de empleo y sueldo, y las destituciones ...."

## IV

■ Al amparo de toda la normativa analizada, el Superintendente de la Policía tiene la facultad para imponer la sanción de expulsión a un miembro de la Policía que incurre en una falta grave. Así lo reiteramos recientemente en el caso de *San Vicente v. Policía de P.R.*, 142 D.P.R. 1 (1996). En ese sentido, hemos resuelto que no constituye un castigo arbitrario, irrazonable, cruel e inusitado prohibido por la Octava Enmienda de la Constitución de los Estados Unidos, el expulsar permanentemente del Cuerpo de la Policía de Puerto Rico a un oficial por haber observado una conducta inmoral o desordenada en detrimento de la moral del Cuerpo. *Mundo v. Tribunal Superior*, 101 D.P.R. 302, 306–307 (1973).

Por otro lado, la acción confirmatoria de la C.I.P.A. respecto a la determinación del Superintendente también recae dentro de su ámbito jurisdiccional. Así, el Art. 2 de la Ley de la C.I.P.A.,[21] 1 L.P.R.A. sec. 172, dispone que dicha agencia constituye un cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cuando el jefe de la agencia de que se trate les haya impuesto cualquier medida disciplinaria. Del mismo modo, establece que la C.I.P.A. podrá confirmar, revocar o modificar la determinación apelada.[22]

■ A todo lo anterior, debemos añadir nuestra reiterada jurisprudencia al efecto de que las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, y que su revisión judicial se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente en forma tan irrazonable que su actuación constituya un abuso de discreción. *Reyes*

---

[21] Ley Núm. 32 de 22 de mayo de 1972, según enmendada.

[22] A este respecto, en *Arocho v. Policía de P.R.*, 144 D.P.R. 765, 771 (1998), resolvimos que "la facultad de la C.I.P.A. para aumentar la sanción impuesta al apelante es incuestionable".

*Salcedo v. Policía de P.R.*, 143 D.P.R. 85 (1997); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692 (1975); *Quevedo Segarra v. J.A.C.L.*, 102 D.P.R. 87 (1974); *Rodríguez v. Comisión Industrial*, 99 D.P.R. 368 (1970); *Román v. Superintendente de la Policía*, 93 D.P.R. 685 (1966). En concreto,

> ... somos de la opinión [de] que la determinación que al respecto realiza el Superintendente de la Policía y la C.I.P.A. se da dentro del ámbito de especialidad de esa agencia. Su determinación en cuanto a la conducta que debe desplegar un miembro de ese cuerpo merece por los tribunales considerable deferencia, y en ese sentido no debe ser alterada a menos que sea irrazonable o arbitraria. *Reyes Salcedo v. Policía de P.R.*, ante, pág. 116.

## V

Como hemos descrito en la relación de hechos, las pruebas de sustancias controladas realizadas al apelante ofrecieron un resultado positivo a cocaína y metabolito de cocaína. No tenemos duda de que tal resultado constituye una violación de las disposiciones sobre faltas graves imputadas por el Superintendente al aquí apelante, y confirmadas por la C.I.P.A.[23] Además, de los mismos hechos se desprende que se concedió al apelante el debido proceso de ley que las normas legales y jurisprudenciales exigen. Por un lado, el procedimiento para obtener los resultados de las pruebas realizadas fue el que establecen los Arts. 5, 6 y 8 de la Orden General Núm. 90-1, la cual se aprobó con el propósito de establecer el procedimiento a seguir para detectar la presencia de sustancias controladas en los em-

---

[23] Las faltas graves imputadas leen como sigue:

"15. Usar drogas, tranquilizantes o estimulantes, a menos que los mismos sean por prescripción facultativa.

.    .    .    .    .    .    .    .    .

"27. Observar una conducta lesiva, inmoral o desordenada en detrimento del Cuerpo de la Policía". Sec. 14.5 del Reglamento de Personal de la Policía, ante, págs. 102–106.

pleados de la Policía.([24]) Por otro lado, el procedimiento administrativo disciplinario que provocó el despido fue el establecido en la normativa aplicable.([25]) El Superintendente suspendió sumariamente de su empleo al apelante de acuerdo con la norma de *Díaz Martínez v. Policía de P.R.*, ante; es decir, procedía la suspensión sumaria puesto que el uso de sustancias controladas por un miembro de la Policía pone en peligro la seguridad de sus compañeros así como de la ciudadanía en general. Posteriormente se celebró la vista administrativa solicitada por el apelante, y el oficial examinador que presidió la misma recomendó la expulsión definitiva del Cuerpo por considerar probados los cargos señalados en la resolución de suspensión sumaria. Por último, tal como hemos discutido ampliamente, la sanción impuesta al apelante por el Superintendente, la expulsión permanente del puesto que ocupaba en la Policía, es acorde con la normativa aplicable.([26])

De todo lo anterior se desprende que la acción del Superintendente, al expulsar al apelante de su puesto en la Policía, y de la C.I.P.A., al confirmar esa determinación, no constituyeron una actuación arbitraria, ilegal o irrazonable que supusieran un abuso de discreción. Por ello, ambas decisiones merecen nuestra total deferencia.([27])

---

([24]) Orden General del Superintendente de la Policía Núm. 90-1 de 1ro de abril de 1990.

([25]) Véase el Art. 14 de la Ley de la Policía, Ley Núm. 26 de 22 de agosto de 1974, según enmendada, 25 L.P.R.A. ant. sec. 1014, y el apartado 2(b) de la Sec. 14.3 del Reglamento de Personal de la Policía, Reglamento Núm. 4216 de 3 de julio de 1981 (25 R.P.R. sec. 1447).

([26]) Véanse: el Art. 14(d) de la Ley Núm. 26 de 22 de agosto de 1974, según enmendada, 25 L.P.R.A. ant. sec. 1014(d); la Sec. 14.3, apartado 2(a) del Reglamento de Personal de la Policía de Puerto Rico, ante, y el apartado I(1) de la Orden General del Superintendente Núm. 90-1 de 1ro de abril de 1990.

([27]) Por último, sólo nos resta discutir brevemente el único caso citado por el apelante en su alegato, traído a colación de la siguiente forma:

"Como ha resuelto esta Alta Superioridad en el caso de *TOMASITA HERNANDEZ CRUZ v. SRIA. DE INSTRUCCION*, 117 D.P.R. 606, 615 (1986), al confirmar una sentencia ordenando la reinstalación de una empleada que había sido convicta de delito grave y se encontraba en sentencia suspendida, indicó:

A tenor con todo lo expuesto, procede confirmar la resolución apelada.

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señora Naveira de Rodón y Señor Hernández Denton concurrieron con el resultado sin opinión escrita.

---

" 'La destitución de un cargo público bajo esas circunstancias, *sin haberse justificado la misma en la necesidad de proteger al servicio público*, atentaría contra el derecho a un empleo ....'" (Énfasis suplido.) Escrito de apelación, págs. 4–5.

De dicha afirmación hecha por este Tribunal en el caso de *Hernández Cruz v. Sria. de Instrucción*, ante, no surge ningún fundamento que nos haga retractarnos de todo el análisis realizado en esta sentencia. Bien al contrario, de la misma se desprende que podría destituirse de un cargo público a su titular si se justifica la necesidad de proteger al servicio público. De todas las exposiciones de motivos contenidas en los fundamentos de esta sentencia, podemos derivar que en el caso de autos está suficientemente justificada la expulsión del apelante en la necesidad de proteger el servicio público.