Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| AGTE. LUIS M. SANTIAGO CRUZ #34649<br><br>Recurrida<br><br>v.<br><br>POLICÍA DE PUERTO RICO<br><br>Recurrente<br>_____<br><br><br>AGTE. CARLOS M. RIVERA SOTO #34867<br><br>Recurrida<br><br>v.<br><br>POLICÍA DE PUERTO RICO<br><br>Recurrente | KLRA202400663 | Revisión Administrativa procedente de la Comisión de Investigación, Procesamiento y Apelación (CIPA)<br><br>Sobre:<br>Expulsión – 60 días<br><br>Casos Núm.<br>16P-27 y 16P-28 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2025.

La parte recurrente, el Negociado de la Policía de Puerto Rico (Negociado), comparece ante nos para que dejemos sin efecto la *Resolución* emitida por la Comisión de Investigación, Procesamiento y Apelación (CIPA), el 6 de agosto de 2024, y notificada el 5 de septiembre de 2024. Mediante la misma, el referido organismo declaró Con Lugar la *Moción en Cumplimiento de Orden y/o Disposición Sumaria* presentada por el Agte. Luis M. Santiago Cruz (Agte. Santiago) y el Agte. Carlos M. Rivera Soto (Agte. Rivera), los aquí recurridos.

Por los fundamentos que expondremos a continuación, se revoca la *Resolución* recurrida.

Número Identificador

SEN2025 _____

**I**

El 25 de noviembre de 2014, el entonces Superintendente de la Policía emitió notificaciones de cargos al Agte. Santiago y al Agte. Rivera. En ambas, se especificó que, según surgió de la investigación correspondiente, el 15 de junio de 2013 se reportó el asesinato del señor Darwin Cruz en el garaje Total de Canóvanas, y que, en el video de la escena del crimen, suministrado por el Instituto de Ciencias Forenses, se pudo observar como el Agte. Santiago tomaba fotos del occiso con su celular, mientras que el Agte. Rivera iluminaba el cuerpo con una linterna. Según expuso, las referidas fotos aparecieron en la página de internet, *www.exposednews.com.* Conforme a la investigación, al Agte. Santiago se le imputó la violación del Artículo 23(b) de la, ahora derogada, Ley de la Policía de Puerto Rico de 1996, Ley Núm. 53 de 10 de junio de 1996 (Ley 53-1996),[1] y las siguientes cuatro faltas graves esbozadas en el Artículo 14, sección 14.5 del Reglamento del Personal de la Policía de Puerto Rico, Reglamento Núm. 4216 de 11 de mayo de 1990 (Reglamento Núm. 4216):

> Falta Grave Núm. 1: Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.
>
> Falta Grave Núm. 18: Declarar falsamente o inducir a declarar falsamente a otra persona ante un magistrado, oficial investigador, organismo judicial o cuasi judicial.
>
> Falta Grave Núm. 34: Comentar o comunicar asuntos policíacos de naturaleza confidencial a personas no autorizadas.
>
> Falta Grave Núm. 36: Dar, comunicar o divulgar, consentir que se dé, comunique o divulgue a persona no autorizada información sobre cualquier investigación o asunto oficial que se haya realizado, se esté realizando, o en los que haya participado o de los que sea parte.

---

[1] La Ley 53-1996, *supra,* fue derogada por las disposiciones de la Ley del Departamento de Seguridad Pública de Puerto Rico, Ley 20-2017, 25 LPRA sec. 3501 *et seq.* No obstante, haremos alusión a sus términos, por ser el estatuto vigente al momento de los hechos en los que se funda la controversia de autos.

Por su parte, al Agte. Rivera se le imputó violación al Artículo 23(b) de la Ley 53-1996, *supra,* y las siguientes dos faltas graves establecidas en el Artículo 14, sección 14.5 del Reglamento Núm. 4216, *supra:*

> Falta Grave Núm. 1: Demostrar incapacidad manifiesta, ineptitud, descuido, parcialidad o negligencia en el desempeño de sus deberes, funciones y responsabilidades.

> Falta Grave Núm. 18: Declarar falsamente o inducir a declarar falsamente a otra persona ante un magistrado, oficial investigador, organismo judicial o cuasi judicial.

En ambas notificaciones de cargos, se le informó a los recurridos que el Superintendente de la Policía, José Caldero López, se proponía a suspenderlos de empleo y sueldo por un término de sesenta (60) días.

Así las cosas, tras celebrar una vista informal, en la que se presentó prueba documental y testifical, el Superintendente de la Policía notificó, el 14 de julio de 2015, la *suspensión de empleo y sueldo por el término de sesenta (60) días (final)* a ambos recurridos. Mediante las aludidas comunicaciones, se le notificó a los recurridos que, tras evaluar la totalidad del expediente, confirmaba la sanción anunciada de suspensión de empleo y sueldo por sesenta (60) días.

Inconformes, el 11 de agosto de 2015, los recurridos presentaron sus respectivos recursos de *Apelación* ante la CIPA. Ambos plantearon que no existía prueba clara, robusta y convincente que demostrara que estaban involucrados en la publicación de la mencionada foto del occiso en una página de internet. A su vez, sostuvieron que el Negociado violentó su debido proceso de ley durante el transcurso de la investigación administrativa y adjudicación final. En específico, arguyeron que el término estatuido en el Artículo 23 de la Ley 53-1996, *supra,* para la investigación y adjudicación de faltas imputadas, sólo podía

extenderse por circunstancias excepcionales. Por tanto, alegaron que el Negociado hizo una evaluación incorrecta de la prueba.

En atención a las circunstancias del pleito de epígrafe, el 1 de septiembre de 2015, la CIPA ordenó la consolidación de ambos casos. Además, ordenó al Negociado a expresarse sobre los planteamientos de los recurridos sobre la radicación del debido proceso de ley, por haber excedido el proceso disciplinario del término dispuesto en la Ley 53-1996, *supra*.

Conforme a ello, el 14 de diciembre de 2015, el Negociado presentó una *Moción en Cumplimiento de Orden*. Arguyó que el término establecido en el Artículo 23 de la Ley 53-1996, *supra*, para resolver la investigación y adjudicación final, era de carácter directivo y no jurisdiccional. Por tanto, sostuvo que la falta de cumplimiento con dicho término no acarreaba el efecto de que la agencia perdiera jurisdicción sobre el caso. A su vez, justificó la tardanza aduciendo que los hechos investigados fueron complejos, por lo cual requirió un tiempo más prolongado de análisis.

Tras evaluar las posturas de las partes, la CIPA declaró, mediante *Orden* notificada el 28 de enero de 2016, *No Ha Lugar* las alegaciones de los recurridos sobre violación al debido proceso de ley por haberse extendido el proceso disciplinario del término dispuesto en la Ley 53-1996, *supra*.

Posteriormente, el 24 de octubre de 2017, la CIPA ordenó la paralización de los procesos al amparo de la ley federal, *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA).

Luego de varios incidentes innecesarios en detallar, el 28 de noviembre de 2023, la CIPA señaló una vista en su fondo para el 24 de enero de 2024. En esta, la CIPA concedió treinta (30) días a los recurridos para presentar, por escrito, los planteamientos de la apelación. Sin embargo, transcurrido el término, los recurridos no presentaron su posición. Por ello, el 7 de marzo de 2024, la CIPA

ordenó a los recurridos a mostrar causa, dentro del término de treinta (30) días, por lo cual no debía imponerle una sanción de cien dólares ($100.00) y/o desestimar su apelación por incumplir con las órdenes de la agencia.

El 30 de abril de 2024, los recurridos presentaron una *Moción en Cumplimiento de Orden y/o Disposición Sumaria*. En esta, alegaron que el Negociado incumplió con el término de noventa (90) días establecido en el *Acuerdo para una Reforma Sostenible de la Policía*, para realizar la investigación y adjudicación final de los hechos. Por tanto, sostuvieron que dicho incumplimiento conllevaba la desestimación de las sanciones por violar su debido proceso de ley. Además, arguyeron que el Negociado carecía de prueba clara, robusta y convincente para concluir que los recurridos tomaron la foto que salió publicada en *www.exposednews.com*, ya que nunca se ocupó el celular de los Agentes para corroborar que, en efecto, estos la habían tomado y publicado.

El 16 de mayo de 2024, la CIPA concedió al Negociado un término perentorio de cuarenta (40) días para presentar su posición. Dispuso que, ante un incumplimiento con dicha orden, se entendería que se allanaba a la solicitud de los recurridos.

Transcurrido el término y sin recibir la posición del Negociado, el 5 de septiembre de 2024, la CIPA notificó la *Resolución* recurrida. En esta, declaró *Ha Lugar* la solicitud de disposición sumaria presentada por los recurridos, y revocó las sanciones impuestas a estos. Además, ordenó el pago de salarios dejados de percibir durante el término que estuvieron suspendidos hasta su reinstalación. Precisa señalar que el dictamen recurrido no está fundamentado.

Inconforme con lo resuelto, el 25 de septiembre de 2024, el Negociado presentó una *Moción de Reconsideración*. Mediante esta, excusó su incomparecencia y explicó que la Oficina de Asuntos

Legales no contaba con el personal administrativo suficiente para atender el alto volumen de correos electrónicos. Además, expuso que había tenido varias circunstancias personales que le habían provocado tomar días de licencia.

En cuanto a los méritos de la solicitud dispositiva de los recurridos, arguyó que la misma incumplía con las exigencias reglamentarias para la disposición sumaria, por estar basada en meras alegaciones, y no incluir documentos ni evidencia que sustentara las alegaciones como hechos incontrovertidos. En relación a la alegación sobre insuficiencia de prueba por parte del Negociado, planteó que contaba con evidencia suficiente para sustentar los cargos. A esos efectos, incluyó un *Certificado de Análisis Forense* del Instituto de Ciencias Forenses sobre las imágenes del video y la evidencia relacionada a este, al igual que una declaración suscrita por el Sargento encargado de la investigación. Además, en términos procesales, el Negociado argumentó que la CIPA había adjudicado su falta de oposición a la solicitud de desestimación instada por los recurridos, como una anotación de rebeldía, sin que tan siquiera se le ordenara mostrar causa o existiese la imposición de alguna sanción económica, como paso previo a la determinación.

Evaluada la petición, el 30 de octubre de 2024, la CIPA notificó una *Resolución*, mediante la cual denegó la solicitud de reconsideración presentada por el Negociado.

Inconforme con la determinación, el 2 de diciembre de 2024, el Negociado presentó el recurso de revisión judicial de epígrafe. En el mismo, formula los siguientes señalamientos:

> Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA) al declarar "Ha Lugar" la Moción en cumplimiento de orden y/o Disposición Sumaria presentada por los recurridos, revocar la suspensión de empleo y sueldo impuesta y ordenar el pago de salarios y haberes dejados de percibir durante el término que estos estuvieron suspendidos a pesar de que existen

hechos esenciales y materiales que están en controversia y no incluyó documentos para establecer la inexistencia de una controversia al respecto.

Erró la Comisión de Investigación, Procesamiento y Apelación (CIPA) al declarar "Ha Lugar" la Moción en cumplimiento de orden y/o Disposición Sumaria presentada por los recurridos, revocar la suspensión de empleo y sueldo por sesenta días impuesta y ordenar el pago de salarios y haberes dejados de percibir durante el término que estos estuvieron suspendidos por el incumplimiento del Negociado de la Policía en presentar su oposición a la solicitud de disposición sumaria de los recurridos, siendo esto una medida irrazonable y drástica ante un primer incumplimiento con una orden de la CIPA.

Luego de examinar el expediente ante nuestra consideración, y con el beneficio de la comparecencia de las partes, procedemos a expresarnos.

## II

### A

Es norma firmemente establecida en el estado de derecho vigente, que los tribunales apelativos están llamados a abstenerse de intervenir con las decisiones emitidas por las agencias administrativas, todo en deferencia a la vasta experiencia y conocimiento especializado que les han sido encomendados. *Jusino Rodríguez v. Junta de Retiro,* 2024 TSPR 138, 215 DPR ___ (2024); *Otero Rivera v. Bella Retail Group, Inc.,* 2024 TSPR 70, 213 DPR ___ (2024); *Voili Voilá Corp. v. Mun. Guaynabo,* 2024 TSPR 29, 213 DPR ___ (2024); *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 35 (2018); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821-822 (2012); *Asoc. Fcias. v. Caribe Specialty II et al.,* 179 DPR 923, 940 (2010). En este contexto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, establece el alcance de la revisión judicial respecto a las determinaciones administrativas. A tal efecto, la referida disposición legal expresa como sigue:

> El Tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.
>
> 3 LPRA sec. 9675.

Al momento de revisar una decisión agencial, los tribunales deben ceñirse a evaluar la *razonabilidad* de la actuación del organismo. *Rolón Martínez v. Supte. Policía,* supra; *The Sembler Co. v. Mun. de Carolina,* supra. Por ello, los tribunales no deben intervenir o alterar las determinaciones de hechos que emita, siempre que estén sostenidas por *evidencia sustancial* que surja de la *totalidad del expediente administrativo. Otero v. Toyota,* 163 DPR 716, 727-728 (2005); *Pacheco v. Estancias,* 160 DPR 409, 431-432 (2003). Nuestro Tribunal Supremo ha definido el referido concepto como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Rolón Martínez v. Supte. Policía,* supra; *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 DPR 425, 437 (1997). Por tanto, compete a la parte que impugne la legitimidad de lo resuelto por un organismo administrativo, identificar prueba suficiente para derrotar la presunción de corrección y regularidad que les asiste. *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 128 (2019).

A tenor con esta norma, los foros judiciales limitan su intervención a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* supra. En caso de que exista más de una interpretación razonable de los hechos, el tribunal debe sostener lo concluido por la agencia,

evitando sustituir el criterio del organismo por sus propias apreciaciones. *Pacheco v. Estancias,* supra. Ahora bien, esta regla basada en deferencia no es absoluta. La misma cede cuando está presente alguna de las siguientes instancias: (1) cuando la decisión no está fundamentada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la apreciación de la ley, y; (3) cuando ha mediado una actuación irrazonable, o ilegal. *Jusino Rodríguez v. Junta de Retiro,* supra; *Otero Rivera v. Bella Retail Group, Inc.,* supra; *Voili Voilá Corp. v. Mun. Guaynabo,* supra; *Costa Azul v. Comisión,* 170 DPR 847, 853 (2007).

Por otro lado, sabido es que las reglas y reglamentos aprobados por las agencias administrativas constituyen normas de carácter general, que ejecutan la política pública en la que descansa la función de determinado organismo. 3 LPRA sec. 9603 (m). Nuestro ordenamiento jurídico reconoce el valor vinculante de los preceptos estatuidos por una agencia por lo que su cumplimiento le es plenamente oponible a la ciudadanía. Ahora bien, en el referido fundamento descansa la afirmación en cuanto a que las agencias administrativas están, por igual, obligadas a observar con fidelidad su cumplimiento, no quedando a su arbitrio el reconocer los derechos allí incluidos. *Torres v. Junta Ingenieros,* 161 DPR 696, 704 (2004); *Com. Vec. Pro. Mej., Inc. v. J.P.,* 147 DPR 750, 761 (1999). De este modo, las reglas y reglamentos aprobados por un organismo administrativo limitan su discreción, quedando llamado, entonces, a velar porque las prerrogativas y requisitos estatutarios reconocidos en los mismos sean cumplidos. *Torres v. Junta Ingenieros*, supra.

**B**

Por otra parte, la Ley de la Comisión de Investigación, Procesamiento y Apelación (CIPA), Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 LPRA sec. 171 *et seq.,* creó la CIPA como

foro apelativo administrativo para intervenir en los casos en que se le imputa mal uso o abuso de autoridad a cualquier funcionario del orden público estatal o municipal, agente de rentas internas o cualquier otro funcionario de la Rama Ejecutiva autorizado a realizar arrestos. Véase, 1 LPRA sec. 172 *et seq.*; *Arocho v. Policía de P.R.*, 144 DPR 765, 770-771 (1998); *Rivera v. Superintendente*, 146 DPR 247, 263 (1998). A esos fines, los procedimientos adjudicativos de la CIPA se rigen por el *Reglamento para la Presentación, Investigación y Adjudicación de Querellas y Apelaciones ante la Comisión de Investigación, Procesamiento y Apelación*, Reglamento Núm. 7952 de 1 de diciembre de 2010 (Reglamento Núm. 7952).

Respecto a la naturaleza de esta función adjudicativa, se ha establecido que una vista ante la CIPA es una especie de juicio *de novo* en el cual el foro apelativo tiene la oportunidad de escuchar la prueba presentada ante la autoridad administrativa contra la que se recurre, o recibir otra prueba distinta, y otorgarle el valor probatorio que a su juicio merezca. Véase, *Arocho v. Policía de P.R.*, supra, pág. 772. De manera que, una vista celebrada ante la CIPA "es propiamente una vista formal, porque en ella se ventilan de manera definitiva, a nivel administrativo, todos los derechos del empleado [y en] este sentido es equivalente a un juicio en sus méritos". *Ramírez v. Policía de P. R.*, 158 DPR 320, 334 (2003).

En lo pertinente a la controversia ante nos, el Artículo 29 del Reglamento Núm. 7952, *supra*, establece lo siguiente respecto a la facultad de la CIPA de imponer sanciones y multas:

> […]
> La agencia podrá imponer sanciones, en su función cuasi judicial, en los siguientes casos:
>
> a) Si el promovente de una acción, o el promovido por ella, dejare de cumplir con las reglas y reglamentos o con cualquier orden del jefe de la agencia, del juez administrativo o del oficial examinador, la agencia a iniciativa propia o a instancia de parte podrá

ordenarle que muestre causa por la cual no deba imponérsele una sanción. La orden informará de las reglas, reglamentos u órdenes con las cuales no se haya cumplido, y se concederá un término de veinte (20) días, contados a partir de la fecha de notificación de la orden, para la mostración de causa. De no cumplirse con esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, entonces se podrá imponer una sanción económica a favor de la agencia o de cualquier parte, que no excederá de doscientos (200) dólares por cada imposición separada, a la parte o a su abogado, si este último es el responsable del incumplimiento.

b) Ordenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia.

[...]

En cuanto a la disposición sumaria de un pleito ante la CIPA, el Artículo 26 del Reglamento Núm. 7952, *supra*, establece lo siguiente:

La Comisión y/o el Juez Administrativo podrá desestimar o disponer sumariamente de una querella o de una apelación motu proprio o a solicitud de parte, de entender que la misma no plantea hechos que justifiquen la concesión de un remedio, o si no habiendo controversia real en los hechos, como cuestión de derecho, procede se dicte resolución a favor de la parte promovente.

El abogado examinador a quien se le refiera una solicitud de desestimación o de disposición sumaria presentará la misma a la Comisión o al Juez Administrativo para su adjudicación.

Cónsono con el Reglamento mencionado, la LPAU habilita la disposición sumaria de las controversias administrativas bajo ciertas circunstancias. Particularmente, la sección 3.7 de la LPAU, *supra*, dispone lo siguiente:

[...]
(b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final, o parcial resolviendo cualquier controversia entre las partes, que sean separable de las controversias, excepto

en aquellos casos donde la ley orgánica de la agencia disponga lo contrario.

La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede.

3 LPRA sec. 9647.

*OCS v. Universal,* 187 DPR 164, 177-178 (2012); *Comisionado Seguros P.R. v. Integrand,* 173 DPR 900, 917 (2008).

**III**

En la presente causa, el Negociado, en esencia, plantea que erró la CIPA al disponer sumariamente del pleito de epígrafe, ello al sostener que esta fue una medida improcedente en derecho, dado a que surge del expediente que existen hechos esenciales y materiales que están en controversia. Enfatiza que los recurridos no acompañaron su solicitud con prueba documental para establecer la inexistencia de hechos controvertidos. A su vez, sostiene que la CIPA incidió al declarar *Ha Lugar* la *Moción en Cumplimiento de Orden y/o Disposición Sumaria* de los recurridos, por haber incumplido la orden emitida el 16 de mayo de 2024, y planteó que dicha acción constituyó una medida irrazonable y drástica, ante un primer incumplimiento.

Habiendo entendido sobre los referidos señalamientos a la luz de los hechos, la prueba y la norma aplicable, resolvemos revocar la *Resolución* recurrida.

Un examen del expediente que nos ocupa mueve nuestro criterio a diferir con lo resuelto por la CIPA. El trámite procesal y sustantivo efectuado en la causa de epígrafe, claramente establece la concurrencia de los factores que nos permiten ejercer nuestras funciones revisoras respecto a la determinación de un organismo

administrativo. A nuestro juicio, la determinación aquí recurrida es contraria a derecho, por lo que la misma debe ser dejada sin efecto.

Tal cual plantea el Negociado, el caso de autos carece de los elementos que propician la disposición sumaria de la controversia entre las partes. Ciertamente, y contrario a lo resuelto por la CIPA, la *Moción en Cumplimiento de Orden y/o Disposición Sumaria*, carece de suficiencia y especificidad, al no cumplir con los requisitos básicos para solicitar la resolución sumaria del caso. Al examinar la aludida moción, es de notar que los recurridos no acompañaron al pliego documentos que sustentaran la inexistencia de controversias materiales. Por otra parte, tampoco surgen del expediente administrativo todos los hechos medulares para concluir, de manera sumaria, que procede la apelación de los recurridos. En específico, el Negociado alude en varios escritos que existe un video suministrado por el Instituto de Ciencias Forense, que demuestra que los recurridos incurrieron en la conducta imputada.

De otro lado, precisa destacar que si la CIPA basó su determinación de disponer del asunto, por el mero hecho del Negociado incumplir con la orden emitida el 16 de mayo de 2024, tampoco era procedente.  Tal cual esbozado, el Artículo 29 del Reglamento Núm. 7952, *supra*, claramente establece que, para que la CIPA pueda ordenar la desestimación de una acción o la eliminación de las alegaciones, por razón del incumplimiento por una de las partes, primero debe imponerle sanciones económicas y notificarle de ello. Solamente en el caso de que dicha parte continuara incumpliendo con las órdenes de la agencia, es que la CIPA podía actuar de conformidad.

Según surge del expediente administrativo, el Negociado incumplió con la orden emitida el 16 de mayo de 2024 por la CIPA, al no presentar su oposición a la *Moción en Cumplimiento de Orden y/o Disposición Sumaria*. Cónsono con el referido Reglamento, al

este ser el primer incidente de incumplimiento por el Negociado, la CIPA debió haberle concedido un término de veinte (20) días, contados a partir de dicha notificación, para que mostrara causa por la cual no debía imponerle una sanción. De no cumplir con la referida orden, entonces estaría facultada para imponerle una sanción económica, y sólo ante otra instancia de incumplimiento posterior a esta, tendría la facultad de eliminar sus alegaciones.

A su vez, cabe recalcar que, en el caso de epígrafe, la CIPA tuvo una situación análoga de incumplimiento ante sí, cuando, el 24 de enero de 2024, concedió treinta (30) días a los recurridos para presentar por escrito sus planteamientos, la cual fue incumplida. En esa instancia, la CIPA no desestimó el pleito, sino que actuó conforme el Artículo 29 del Reglamento Núm. 7952, *supra,* y ordenó a los recurridos a mostrar causa por lo cual no debía imponerle una sanción y/o desestimar su apelación.  Somos del criterio que la CIPA, en lugar de eliminar las alegaciones del Negociado, debió haber dictado una orden similar ante el incumplimiento del Negociado con la *Orden* notificada el 16 de mayo de 2024.

A tenor con lo anterior, la determinación aquí recurrida se aparta de lo que debería constituir una adjudicación correcta.  A nuestro juicio, el remedio resuelto a favor de los recurridos, mediante el mecanismo sumario de adjudicación, está totalmente carente de apoyo fáctico y normativo.  Nada en el expediente sostiene la procedencia de la súplica por estos expuesta, así como, tampoco, inexistencia de controversias en cuanto a hechos materiales y medulares. Además, nuevamente reiteramos que el Negociado incumplió en una sola ocasión con las órdenes de la CIPA, por lo cual no procedía la eliminación de sus alegaciones, al amparo del Reglamento Núm. 7952, *supra.* Así pues, no podemos sino dejar sin efecto la *Resolución* recurrida.

**IV**

Por los fundamentos que anteceden, se revoca la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones